COMMONWEALTH *vs.* JOHN KOZLOWSKY.

Middlesex.   March 28, 1921. — May 23, 1921.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL & JENNEY, JJ.

*Pleading, Criminal,* Indictment, Bill of particulars, Motion to quash, Plea in abatement. *Attorney General. District Attorney. Jury and Jurors. Practice, Criminal,* Grand jury proceedings, Plea in abatement, Exceptions. *Words,* " Steal."

An indictment charged that the defendant " did attempt to steal one automobile and in such attempt did enter said automobile and endeavor to start it but did fail in the perpetration of said attempted offence and was intercepted and prevented in the execution of said attempted offence." A motion of the defendant for particulars was granted and a bill of particulars was filed charging that the defendant either alone or with other unauthorized persons attempted, in front of a house in Cambridge designated by street and number, to start an automobile of specified make and number, of a value in excess of $2,000, not the property of the defendant or any of the other persons present, but belonging to one B. The defendant thereafter filed a motion to quash the indictment on the grounds that neither the value of the automobile nor the name of the owner was stated in the indictment, nor was it stated that the owner was or was not known to the jurors; that it was not stated therein that the automobile was not owned by the defendant nor that his acts were committed with intent to steal and that the indictment was indefinite, vague and uncertain. The motion to quash was denied. *Held,* that

(1) The indictment and the bill of particulars furnished to the defendant ·adequate information concerning the nature of the crime with which he was charged;

(2) The words of the indictment, " did attempt to steal one automobile," in brief and simple form expressed the meaning that the automobile was not the property of the defendant but was the property of some third person whose name was not stated;

(3) The motion to quash was denied rightly;

(4) It was not necessary to decide whether, if the motion to quash had been filed before the bill of particulars and all rights under it seasonably had been saved, the indictment could have been held sufficient.

The defendant in an indictment charging an attempt to steal filed a plea in abatement in substance setting out that a certain attorney at law, having previously questioned and examined the defendant and not being the district attorney nor his assistant nor otherwise authorized to be present, was with the grand jury while it was hearing and passing upon the matter of the indictment. Upon the issue of fact thereby raised, the defendant claimed a trial by jury. No replication was filed by the Commonwealth. A discussion ensued between the judge, the assistant district attorney, the defendant's attorney, and the attorney named in the plea, during which that attorney made a statement of facts which was accepted as true except as to his statement that his admitted presence with the grand jury was due to his appointment as special assistant attorney general, the

attorney for the defendant refusing to admit such an appointment. Thereupon there was produced a record attested by the executive secretary and certified by the Secretary of the Commonwealth under the great seal of the Commonwealth, to the effect that the attorney " appeared in the Council Chamber and was duly sworn in as a Special Assistant Attorney General," and that it was " a true copy of an item appearing in the minutes of the Executive Council under " a date preceding the hearing by the grand jury. The attorney for the defendant did not point out any further question of fact which he contended was open to be decided by a jury, nor indicate any fact in controversy regarding the certificate or the plea in abatement. *Held*, that

    (1) No question of fact was raised in these circumstances;

    (2) The defendant having made no suggestion in any way impugning the accuracy, the pertinency or the entire reliability of the record, it established that the attorney held the office of assistant attorney general under due authority of law;

    (3) In the circumstances, the only question open under the plea being one of law, the defendant was not entitled to a trial by jury;

    (4) There was no necessity for a replication by the Commonwealth to the plea.

Statement by RUGG, C. J., of the history of the office of Attorney General.

The office of Attorney General was one of the institutions of the common law which were brought to this country by the early settlers, and its functions constituted a part of the body of the common law generally recognized as a part of our jurisprudence.

When the provision of St. 1807, c. 140, § 10, that ". . . the foreman of each grand jury, in the presence of the attorney-general, solicitor-general, or county-attorney, shall have power to swear any witness to testify before such grand jury . . ." was changed in Gen. Sts. c. 171, § 9, and subsequent revisions of the statutes to read, " The foreman of the grand jury, or the prosecuting officer before them, may administer oaths . . . ," no change of meaning was intended and the statute as it now stands includes the Attorney General under the designation " prosecuting officer " as much as if he were specifically named in it.

The Attorney General has a right to be present personally or by an assistant at the deliberations of a grand jury whenever his public duty seems to him to require it.

The provisions of G. L. c. 12, § 6, do not limit the power of the Attorney General, when attending the grand jury, to the examination of cases in which the accused are charged with capital crimes.

St. 1843, c. 99, wherein the Legislature undertook to abolish the office of Attorney General, and St. 1849, c. 186, where it was re-established, had no effect upon the powers of that office as they now exist.

The powers of the Attorney General as above described are not affected by art. 19 of the Amendments to the Constitution of the Commonwealth.

Under R. L. c. 219, §§ 31, 32, 35 (now G. L. c. 278, §§ 27, 28, 31), the decision of the Superior Court overruling the plea in abatement above described is final and is not open to exception.

At the trial of an indictment for attempting to steal an automobile, there was evidence tending to show that the person named in the bill of particulars as owner held title to an automobile such as was there described, that he lived at the house designated by street and number opposite which an automobile was parked, similar in description as to make and type to the one set out in the bill of particulars, that the defendant was in the neighborhood on the night in question, riding in another automobile, which he left for a considerable period of time and

returned to it and rode away in it, and that he was seen standing near the automobile in question and was seen sitting in the driving seat of that automobile doing " something in the car, . . . working on the dash . . . working on the switch, on the dash." *Held,* that there was ample evidence to warrant a verdict of guilty.

INDICTMENT, found and returned on November 5, 1920, charging that the defendant on August 21, 1920, at Cambridge "did attempt to steal one automobile and in such attempt did enter said automobile and endeavor to start it but did fail in the perpetration of said attempted offence, and was intercepted and prevented in the execution of said attempted offence."

On November 9, the defendant filed a plea in abatement on the ground " that, while the grand jury was hearing, inquiring into and examining the matter of the indictment, one Henry F. Hurlburt, Esquire, who had previously questioned this defendant and prepared the case against him and who was not a member of the grand jury, and not the district attorney or his assistant, and was not a stenographer appointed by a justice of the Superior Court under R. L. c. 165, § 84, and was not a witness before the grand jury, and who was not authorized to be present, was present in the grand jury room with the grand jury while it was so hearing, inquiring into and examining said matter."

On November 15, the defendant filed a motion for a bill of particulars, which was allowed, and on November 18, a bill of particulars, described in the opinion, was filed.

On November 19, the defendant filed a motion to quash the indictment on the grounds (1) that the indictment was formally defective and did not set forth any offence known to the law fully and plainly, substantially and formally as required by art. 12 of the Declaration of Rights; (2) because it was not alleged that the automobile referred to was of any value; nor (3) either that the owner of the automobile was to the grand jurors known or was unknown; nor (4) the name and identity of the alleged owner of the automobile; nor (5) that the automobile was not the property of the defendant; nor (6) that the defendant " did enter said automobile and endeavor to start it " with intent to steal; nor (7) that the defendant did any act with criminal intent; and (8) because the indictment was "indefinite, vague and uncertain and appears to state a conclusion that the defendant did endeavor to start one automobile without stating what act, if anything, the defendant

did or whether the ' endeavor ' charged is intended to mean the defendant's wish or desire or what it is intended to mean."

On November 19, the plea in abatement was overruled and the motion to quash was denied upon a hearing by *Raymond, J.*, a plea of not guilty then was entered and, after a motion for further particulars was denied, the defendant was placed on trial upon two indictments, the one above set forth and an indictment charging that he and other defendants on or about August 1, 1920, at Cambridge did conspire together to steal certain automobile tires of the value of more than one hundred dollars of the property of some person to your grand jurors unknown. On the indictment for conspiracy the defendant was found not guilty. Material evidence bearing upon the indictment for attempt to steal is described in the opinion. The defendant was found guilty and alleged exceptions.

*C. W. Rowley*, for the defendant.

*E. H. Abbot, Jr.*, Assistant Attorney General, for the Commonwealth.

*J. C. Pelletier*, District Attorney for the Suffolk District, by leave of court filed a brief in his official capacity, having no interest in the case other than that the law should be established as to the respective powers of the Attorney General and the District Attorney with reference to the presentment of cases before the grand jury, the argument and authorities in the brief being directed only to the issue, whether the Attorney General had a right to make presentment before the grand jury on his own motion.

RUGG, C. J. The defendant was tried in the Superior Court upon two indictments. In one it was charged that he conspired with others to steal automobile tires. Since he was acquitted upon that indictment, the numerous exceptions saved in reference to it need not be considered. In the other indictment, it was charged that the defendant " did attempt to steal one automobile and in such attempt did enter said automobile and endeavor to start it but did fail in the perpetration of said attempted offence, and was intercepted and prevented in the execution of said attempted offence."

Upon motion by the defendant, a bill of particulars was filed charging that the defendant either alone or with other unauthorized persons attempted, in front of 20 Prescott Street, Cambridge,

to start an automobile of specified make and number, of a value in excess of $2,000, not the property of the defendant or any of the other persons present, but belonging to Kingsbury Brown. A motion for further particulars was denied.

The indictment and the bill of particulars furnished to the defendant adequate information concerning the nature of the crime with which he was charged. *Commonwealth* v. *Wakelin,* 230 Mass. 567, 571.

The defendant thereafter filed a motion to quash because of alleged defects in the indictment. This motion rightly was denied. The indictment as originally framed did not follow the statutory form set out in the schedule of forms annexed to R. L. c. 218, at page 1847, now G. L. c. 277, at page 2824, in that there was no allegation that the automobile was "the property of (another) " or the property of a person named. It is provided by R. L. c. 218, § 25, now G. L. c. 277, § 25, that if an indictment for a crime which involves the attempted commission of an injury to property, describes the property with sufficient certainty, the name of the owner need not be alleged. The word " steal " as used in an indictment has, under the definition given in R. L. c. 218, § 38, now G. L. c. 277, § 39, become a term of art and includes the criminal taking of personal property of another with intent to deprive the owner permanently of the use of it. The words of the indictment at bar, namely, " did attempt to steal one automobile " in brief and simple form express the meaning that the automobile was not the property of the defendant but was the property of some third person whose name was not stated. *Commonwealth* v. *Farmer,* 218 Mass. 507, 509. A bill of particulars setting out adequate details is required as matter of right where as in the case at bar the indictment alone did not sufficiently inform the defendant. *Commonwealth* v. *King,* 202 Mass. 379. The description of the attempt was sufficiently detailed. *Commonwealth* v. *Peaslee,* 177 Mass. 267.

It is not necessary to decide whether, if the motion to quash had been filed first and all rights under it seasonably saved, the indictment could have been held sufficient. See *Commonwealth* v. *McDonald,* 5 Cush. 365. The defendant, by first filing his motion for a bill of particulars, had received in fulness of detail all the requisite information which the indictment failed to give.

*Commonwealth* v. *Sinclair*, 195 Mass. 100. The constitutionality of the criminal pleading act has been upheld so many times, it is no longer open to question.

The defendant filed a plea in abatement in substance setting out that Henry F. Hurlburt, Esquire, having previously questioned and examined the defendant and not being the District Attorney or his assistant nor otherwise authorized to be present, was with the grand jury while it was hearing and passing upon the matter of the indictment; and claimed the right of trial by jury upon the issues of fact thereby raised. A discussion ensued between the judge, the Assistant District Attorney, the attorney for the defendant, and Mr. Hurlburt, during which a statement of fact was made by the latter. It is manifest from the record that this statement was accepted as true in every particular save only that his admitted presence with the grand jury was due to his appointment as special assistant attorney general. The attorney for the defendant refused to admit this appointment, whereupon a record attested by the executive secretary and certified by the Secretary of the Commonwealth under the great seal of the Commonwealth, as provided in R. L. c. 175, § 74, now G. L. c. 233, § 76, was produced to the effect that Mr. Hurlburt " appeared in the Council Chamber and was duly sworn in as a Special Assistant Attorney General," this being " a true copy of an item appearing in the minutes of the Executive Council under date of October 20, 1920." The claim of trial by jury upon the plea in abatement then was reiterated by counsel for defendant, who contended that the authority of Mr. Hurlburt in that regard was a question of fact. The judge stated that no jury trial would be allowed concerning facts admitted. The attorney for the defendant did not further point out any question of fact which he contended was open to be decided by a jury, nor indicate any fact in controversy regarding the certificate or the plea in abatement. No question of fact was raised under these circumstances. The Attorney General was authorized by R. L. c. 7, § 9, to " appoint such assistants as the duties of the office require " and to employ additional legal assistance with the approval of the Governor and Council. See now G. L. c. 12, § 2. The entry upon the records of the Executive Council of the taking of an oath by Mr. Hurlburt as special assistant attorney general in view of these statutes imported under

the circumstances here disclosed as an established fact that in truth he held such office by adequate appointment under due authority of law. The defendant made no suggestion in any way impugning the accuracy, the pertinency or the entire reliability of this record. There was no intimation of the existence of anything outside the record in any particular affecting its verity. There was nothing open to doubt left to be found by a tribunal trying the facts. The only question presented was one of law and not of fact. The defendant was not entitled to a trial by jury upon the plea in abatement under these circumstances. *Dean* v. *Boston Elevated Railway,* 217 Mass. 495.

There was no necessity for a replication by the Commonwealth to the plea in abatement. The practice in this respect on the criminal side of the court has become in large part assimilated to that prevailing on the civil side of the court, where no replication is required. See *Comstock* v. *Livingston,* 210 Mass. 581. In the absence of express admission, the matters stated in the plea in abatement were at once in issue. There was no admission, by pleading, failure to plead or otherwise, that Mr. Hurlburt was not authorized to be present at the deliberation by the grand jury.

The question is raised whether under our Constitution and laws the Attorney General or a special assistant appointed for that purpose may be present in his official capacity during the deliberations of the grand jury.

The office of Attorney General is of considerable antiquity. Its early history and growth in England are traced in an article by Mr. Holdesworth, the learned historian of English Law, in 13 Ill. Law Rev. 602, wherein its development is shown to have been essentially completed before the main migration of our ancestors to this country.

The first appointment of an Attorney General in Massachusetts, so far as we are aware, was of Anthony Checkley on April 29, 1680 (see Council record 1680, court files, Suffolk County No. 1857), six years earlier than the appointment in or about July, 1686, of Benjamin Bullivant, frequently mentioned as the first Attorney General. Proceedings of Massachusetts Historical Society, June 1895, Vol. 10 (2d ser.) 285, *et seq.,* Vol. 13 (2d ser.) 261. Washburn's Judicial History of Mass. 87. 12 Law Rep.

43.  The office was recognized as already in existence by 1 Prov. Laws, 1693–4, c. 3, § 12.  When established it became endowed with the powers and duties appertaining to it at common law, so far as pertinent to the needs of the colony and province.  It became one of the institutions of the common law brought by the early settlers to these shores, and its functions constituted a part of that body of common law generally recognized as a part of our jurisprudence.  *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162, 166.  The powers and duties of the office appear to have rested largely upon the common law and the needs of the province as manifested in the practical administration of the office until the adoption of the Constitution with little of statutory regulation or modification.  See *Petition of Anthony Checkley, Attorney General,* 7 Prov. Laws, 709; 40 Mass. Archives, 718.  That the Attorney General was the chief prosecuting officer during the provincial period seems clear both from the comparatively infrequent resolves of the General Court concerning particular instances and from his actual appearances in court.  See *Rex* v. *Doaks,* Quincy, 90; *Rex* v. *Pourksdorff,* Quincy, 104; *Rex* v. *Mangent,* Quincy, 162. The office was recognized by c. 2, § 1, art, 9 of the Constitution, and since then has continued to be referred to from time to time in amendments.  Its powers and duties continued as a part of the common law of the Commonwealth save as changes have been made by the General Court and in the customs of the Commonwealth.  See c. 6, art. 6 of the Constitution.  It often has been recognized that the powers of the Attorney General are not circumscribed by any statute, but that he is clothed with certain common law faculties appurtenant to the office.  *Parker* v. *May,* 5 Cush. 336, 339, 340.  *Dearborn* v. *Ames,* 8 Gray, 1, 16.  *Attorney General* v. *Parker,* 126 Mass. 216, 219.  *McQuesten* v. *Attorney General,* 187 Mass. 185.  *Attorney General* v. *Bedard,* 218 Mass- 378, 385.  *Attorney General* v. *Suffolk County Apportionment Commissioners,* 224 Mass. 598, 610.  *Attorney General* v. *New York, New Haven & Hartford Railroad,* 197 Mass. 194.  *Attorney General* v. *Methuen,* 236 Mass. 564, 569.

It was provided by St. 1807, c. 140, § 10, that " . . . the foreman of each grand jury, in the presence of the attorney-general solicitor-general, or county-attorney, shall have power to swear any witness to testify before such grand jury. . . ."  This pro-

vision in substance is found in Rev. Sts. c. 136, § 9. In Gen. Sts. c. 171, § 9, it was compressed into these words: " The foreman of the grand jury, or the prosecuting officer before them, may administer oaths . . . ," which since have been continued. Pub. Sts. c. 213, § 9. R. L. c. 218, § 9. G. L. c. 277, § 9. There is nothing to indicate that any change of meaning was intended when the verbal change was made in the General Statutes. This omission of the designation of specified public officers and the substitution of the more comprehensive generic phrase " prosecuting officer " wrought no change in signification. It was simply the adoption of an abridgment of language in the interest of brevity and of compendiousness of statement. It is a familiar principle of statutory interpretation that mere verbal changes in the revision of statutes do not alter their meaning. *Wright* v. *Dressel,* 140 Mass. 147, 149. *Savage* v. *Shaw,* 195 Mass. 571. *Great Barrington* v. *Gibbons,* 199 Mass. 527. *Main* v. *County of Plymouth,* 223 Mass. 66, 69. *Derinza's Case,* 229 Mass. 435, 442. *International Paper Co.* v. *Commonwealth,* 232 Mass. 7, 13. *Walsh* v. *Commonwealth,* 224 Mass. 39, 41. The statute as it now stands includes the Attorney General as much as if he were named in it. In carefully written judgments the use of the words of the statute have been followed. In *Commonwealth* v. *Williams,* 2 Cush. 582, at pages 584, 585, it was said: " It is undoubtedly the policy of our system of criminal jurisprudence, that the District Attorney, or other public officer having official charge of the criminal department, should have the active superintendence and management of all criminal cases, on the trial of the same before the jury. . . . As a general rule, this is required, and the conducting of the case before the court and jury is to be confined to the public prosecutor." *Commonwealth* v. *Scott,* 123 Mass. 222, 233.

The office of district attorney or county attorney appears to have been created by St. 1807, c. 18, § 1. In this act the controlling authority of the Attorney General in all prosecutions is recognized. In St. 1832, c. 130, § 9, the powers of the District Attorney are stated in substantially the same language as is found in R. L. c. 7, § 17, namely: " The district attorneys within their respective districts shall appear for the Commonwealth in the Superior Court in all cases, criminal or civil, in which the Commonwealth is a party or interested, and in the hearing, in the

Supreme Judicial Court, of all questions of law arising in the cases of which they respectively have charge, shall aid the Attorney General in the duties required of him, and perform such of his duties as are not required of him personally; but the Attorney General, when present, shall have the control of such cases. They may interchange official duties." See now the same in effect in G. L. c. 12, § 27. That section in substance has been found in all the intervening revisions. As matter of construction the right of the Attorney General to be present and exercise his authority whenever his public duty seems to him to require it is recognized by the words " but the Attorney General, when present, shall have the control of such cases." This includes a right to be present at the deliberations of the grand jury. As matter of authority it has been so adjudicated. In *Commonwealth* v. *Tuck,* 20 Pick. 356, 364, it was said in 1838: " The authority of the Attorney General, when present, to conduct and manage all criminal prosecutions, is unquestionable."

It is provided by R. L. c. 218, § 10, now G. L. c. 277, § 10, that " The grand jury may appoint one of their number as clerk, and he shall keep a record of their proceedings and, if the jury so direct, shall deliver it to the Attorney General or District Attorney." That section in substantially the same form goes back to Rev. Sts. c. 136, § 10, when the right of the Attorney General to appear before the grand jury was indubitable. If the Attorney General has no right to attend the deliberations of the grand jury, this provision of the statute would present great difficulties in view of the decisions of *Commonwealth* v. *Harris,* 231 Mass. 584, and *Lebowitch, petitioner,* 235 Mass. 357, to the effect that the presence of strangers with the grand jury violates the constitutional secrecy of that institution. The delivery of the records of the grand jury to one not of their number or not entitled to be present at their sessions would be a grave invasion of the secrecy of its proceedings. This provision is consistent and harmonious with the idea of the Attorney General as being the chief prosecuting officer.

The words of St. 1913, c. 709, § 1, now found in G. L. c. 12, § 10, to the effect that the Attorney General " shall take cognizance of all violations of law . . . affecting the general welfare," are exceedingly broad. While doubtless that act was directed primarily to the suppression of unlawful combinations in restraint of

trade, there is avowed rather than conferred by those words the extensive power possessed by him in criminal prosecutions.

It is provided by R. L. c. 7, § 4, now G. L. c. 12, § 6, that the Attorney General " shall consult with and advise the district attorneys in matters relating to their duties; and, if in his judgment the public interest so requires, he shall assist them by attending the grand jury in the examination of a case in which the accused is charged with a capital crime, and appear for the Commonwealth in the trial of indictments for capital crimes." These words are not a limitation upon the power of the Attorney General. They state his usual functions, but do not constrict his general authority existing from early times and recognized as still existing by R. L. c. 7, § 17 (G. L. c. 12, § 27). The implication of the words is that a single superior officer is conferring with those of less extensive power. Doubtless the statutory history concerning these two offices may not have been strictly consistent in every particular, but in the main the power of the Attorney General has not been restricted.

This construction harmonizes the several sections of the statute and continues the supremacy of the Attorney General as the chief law officer of the Commonwealth. Any other interpretation would establish the district attorneys as independent public officers free from effective supervision respecting the protection of the public by the prosecution of crime, a subject which concerns the welfare of the entire Commonwealth and transcends the internal interests of the several districts into which the State is divided for the election of district attorneys. See R. L. c. 156, § 4, now G. L. c. 211, § 4.

In this connection it is unnecessary to consider St. 1843, c. 99, wherein the Legislature undertook to abolish the office of Attorney General, and St. 1849, c. 186, wherein it was re-established. See *Taft* v. *Adams*, 3 Gray, 126; *Graham* v. *Roberts,* 200 Mass. 152, 157; *Barnes* v. *Mayor of Chicopee*, 213 Mass. 1, 4; *Opinion of the Justices*, 216 Mass. 605, 606; *Ashley* v. *Three Justices of the Superior Court*, 228 Mass. 63, 73. Even if these statutes are taken at their full face value, see *Commonwealth* v. *Boston & Maine Railroad,* 3 Cush. 25, 48, when the office was re-established by the latter statute, its implied powers as well as those expressly enumerated became revived. This is apparent from numerous cases hereto-

fore cited and decided since 1849, wherein the common law incidents of the office quite outside the express statutory powers have been recognized and declared.

The provisions of art. 19 of the Amendments to the Constitution, to the effect that district attorneys shall be' chosen by the people of the several districts, have no significance in this connection.

The effect of the statutes is to establish the office and prescribe the duties of the district attorneys, with the manifest purpose that the functions of prosecuting officer ordinarily shall be performed by them, but not to exclude utterly the Attorney General from those functions in instances where the exigencies of the public welfare require his intervention. The determination as to the existence of such an exigency must as a general rule rest with the Attorney General. The power of the Attorney General · under the present state of the law enabled him personally or by his assistant to be present with the grand jury in its deliberations. Of course, what was said in *Commonwealth* v. *Harris*, 231 Mass. 584, 586, and *Opinion of the Justices*, 232 Mass. 602, 604, was with reference to the District Attorney and manifestly was not directed to the Attorney General. As already has been pointed out, both are included under the term " prosecuting officer."

This conclusion is consonant with what was said in *State* v. *Robinson*, 101 Minn. 277, at page 288: " The office of Attorney General has existed from an early period, both in England and in this country, and is vested by the common law with a great variety of duties in the administration of the government. The duties are so numerous and varied that it has not been the policy of the Legislatures of the States of this country to attempt specifically to enumerate them. Where the question has come up for consideration, it is generally held that the office is clothed, in addition to the duties expressly defined by statute, with all the powers pertaining thereto at the common law. . . . From this it follows that, as the chief law officer of the State, he may, in the absence of some express legislative restriction to the contrary, exercise all such power and authority as public interests may from time to time require. He may institute, conduct, and maintain all such suits and proceedings as he deems necessary for the enforcement of the laws of the State, the preservation of order, and the pro-

tection of public rights." To the same general effect see *Ex parte Young,* 209 U. S. 123, 160; *People* v. *Santa Clara Lumber Co.* 126 App. Div. (N. Y.) 616, 618; *People* v. *Miner,* 2 Lansing, 396; *Hunt* v. *Chicago Horse & Dummy Railway,* 20 Bradw. 282, 286–290; affirmed in 121 Ill. 638, 642; *State* v. *Young,* 54 Mont. 401, 403.

The question has been considered at large. But another conclusive answer to the defendant's contention on this branch of the case is that the decision of the Superior Court upon questions raised on a plea in abatement to an indictment or complaint is made final and not open to exception by R. L. c. 219, §§ 31, 32, 35, now G. L. c. 278, §§ 27, 28, 31. The matters set forth in the plea rightly were described as in abatement. *Lebowitch, petitioner,* 235 Mass. 357, 362.

There was ample evidence to warrant a verdict of guilty. There was testimony to the effect that the person named in the bill of particulars as owner held title to an automobile such as was there described, that he lived at the house designated by street and number opposite which an automobile was parked, similar in description as to make and type to the one set out in the bill of particulars, that the defendant was in the neighborhood on the night in question, riding in another automobile, which he left for a considerable period of time and returned to it and rode away in it, and that he was seen standing near the automobile in question and was seen sitting in the driving seat of that automobile, doing "something in the car, . . . working on the dash . . . working on the switch, on the dash." An attempt to steal the automobile well may have been thought to be the only rational explanation of these facts if the jury found them to be true. There was no error in refusing to direct a verdict for the defendant.

*Exceptions overruled.*