COMMONWEALTH *vs.* ROQUE PENA, JR.

No. 94-P-1705.

Middlesex. June 22, 1995. - October 20, 1995.

Present: WARNER, C.J., PERRETTA, & LENK, JJ.

*"Carjacking" Statute. Larceny. Evidence,* Inference. *Practice, Criminal,* Instructions to Jury. *Motor Vehicle,* Theft.

At the trial of an indictment charging the defendant with violation of the "carjacking" statute, G. L. c. 265, § 21A, the evidence was sufficient not only to establish that the defendant intended to drive off in the car in question but also to support the inference that the defendant intended permanently to deprive the owner of the vehicle. [334-337]

At a criminal trial, no substantial risk of a miscarriage of justice was created by the judge's failure to give a certain instruction to the jury that was not requested nor its omission objected to, where the instructions as a whole were careful, accurate and without error. [337]

INDICTMENT found and returned in the Superior Court Department on May 26, 1993.

The case was tried before *Patrick J. King,* J.

*Peter M. Dempsey* for the defendant.

*David C. Megan,* Assistant District Attorney, for the Commonwealth.

LENK, J. On his appeal from a conviction by a Superior Court jury on an indictment charging him with violation of the recently enacted "carjacking" statute, G. L. c. 265, § 21A,[1] the defendant, Roque Pena, Jr., claims error in: (a) the denial of his motion for a required finding of not guilty; and (b) the judge's failure to instruct the jury that the de-

---

[1]The statute, as inserted by St. 1992, c. 412, § 2, states, in relevant part:

"Whoever, with intent to steal a motor vehicle, assaults, confines, maims or puts any person in fear for the purpose of stealing a motor vehicle shall, whether he succeeds or fails in the perpetration of stealing the motor vehicle be punished . . . ."

fendant would be entitled to an acquittal if he intended to return the car or leave it where it could be recovered. We affirm.

We summarize the facts which the jury could have found from the evidence presented by the Commonwealth. See *Commonwealth v. Latimore*, 378 Mass. 671, 676-677 (1979). On April 30, 1993, at approximately 11 P.M., Mark Caulfield and his girlfriend, Stacey Rochford, came out of the Powder House Pub in Somerville and walked to their car, a recently buffed and polished, bright red, 1986 four-door Jaguar XJ6, which was parked a block away.

Caulfield unlocked the front, driver-side door of the car, which had the effect of automatically unlocking all four of the car's doors. Caulfield entered the car on the driver's side, Rochford on the passenger's side; Caulfield started the car. At that point, however, he noticed that his beeper was going off, and he left the vehicle and entered a nearby bar to use a pay phone to respond.

Shortly after Caulfield left, Rochford observed two men walking towards the car. One had a large build, being over six feet tall and approximately two hundred pounds; the other was shorter and had a slighter build. The larger man was later identified as the defendant.[2] Rochford was concerned about the men, and she locked her car door. As the two men walked past the car, the beeper went off again, and Rochford leaned down to look at it. When she looked up again, the defendant was getting in the driver's side of the vehicle, and his companion was running around the front of the car. The companion tried to enter it by Rochford's door, but, finding the door locked, he got into the rear, passenger-side seat, directly behind Rochford. The defendant said something to his companion, of which Rochford only heard clearly the word "ride." Then the defendant placed his foot on the brake and his hand on the gear shift.

---

[2]The defendant's companion was identified as Bruce Green; he was charged with the same offense as the defendant but played no role in the defendant's trial.

Rochford reacted to the situation by pushing the defendant's hand off the gear shift, grabbing the key from the ignition, and getting out of the car. She had grabbed the keys so that, if they kept her from leaving the car, they could not go anywhere, feeling that she "would have done anything just to get out of the car, just to not leave that spot." She then ran to the bar where Caulfield was making his telephone call and shouted to him, "Someone's trying to steal the car!" When they returned to their car, the defendant and his companion had left the area.

The defendant, testifying on his own behalf, stated that he had drunk a lot of alcohol prior to the incident; that Rochford had smiled at him as he and his companion walked past the car; that he had entered the Jaguar, on a dare from his companion, to try to pick up Rochford; and that he had left when Rochford did not respond to his opening line. The defendant denied having put his foot on the brake or his hand on the gear shift, and he denied intending to drive away in the car. He also denied that his companion had entered the Jaguar at any time.

The question on review is whether, viewing the evidence in the light most favorable to the prosecution, and considering all reasonable and possible inferences, a rational jury could have found the essential elements of the crime proven beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. at 677-678. *Commonwealth* v. *Martino*, 412 Mass. 267, 271-273 (1992). "To the extent that conflicting inferences are possible from the evidence, 'it is for the jury to determine where the truth lies.'" *Commonwealth* v. *Wilborne*, 382 Mass. 241, 245 (1981), quoting from *Commonwealth* v. *Amazeen*, 375 Mass. 73, 81 (1978). *Commonwealth* v. *Martino*, 412 Mass. at 272.

The defendant argues on appeal that it was error to deny his motion for a required finding of not guilty. He contends that there was insufficient evidence to support the jury's verdict, in particular, that there was insufficient evidence that he intended permanently to deprive the owners of — that is, to steal — the Jaguar.

The defendant emphasizes the fact that, unlike the defendants in *Commonwealth* v. *Dreyer*, 18 Mass. App. Ct. 562 (1984), and *Commonwealth* v. *Graud*, 8 Mass. App. Ct. 915 (1979), when he was arrested, he did not have in his possession any instruments associated with the stealing of automobiles. Therefore, he asserts, the jury had no basis for concluding that he had "larcenous intent." Implements such as a screwdriver and coat hanger (*Dreyer*) or heavy gloves and a dent puller (*Graud*) are, however, primarily used in this context only as means of gaining entry to, and starting, an automobile. No such implements were necessary in the present case: the defendant admits to entering the Jaguar through an unlocked car door, and at a time when the keys were in the ignition and the car was already running.

The jury were asked to make two inferences: first, that the defendant intended to drive off in the car and, second, that he did not intend to return it (that is, that this was not simply "joyriding"). As to the first inference (which the defendant contested at trial — he claimed that he was only "courting" Rochford), burglary tools would have supported the inference, but equally if not more compelling is the testimony offered by the Commonwealth that the defendant had his foot on the Jaguar's brake and his hand on the shift lever, apparently ready to put the car in gear and drive it away. The testimony that the defendant said something to his companion about a "ride" also supports this inference. As to the second inference, burglary tools would be barely relevant, since breaking into a car and starting it are as consistent with "joyriding" as they are with theft.

There cannot be much doubt about the sufficiency of the evidence for the first inference. According to Rochford, the defendant was in the process of driving the car away when she fled with the keys. The more difficult question is whether the jury could, from the evidence before them, conclude beyond a reasonable doubt that the defendant intended permanently to deprive the owner of the Jaguar. However, once the initial inference is made, that the defendant intended to take the car by putting Rochford in fear, the inference that the

defendant did not intend simply to return the vehicle, or leave it somewhere by the roadside, is easily sustained.

In *Commonwealth* v. *Kozlowsky*, 238 Mass. 379 (1921), the court held that there was "ample evidence" to warrant a conclusion that the defendant intended to steal an automobile, where the defendant had first been seen near the automobile, and later seen "doing 'something in the car . . . working on the switch, on the dash.' " *Id.* at 391.[3] The facts in *Commonwealth* v. *Kozlowsky* are indistinguishable from those of the present case, as regards providing evidence to justify an inference that the defendant intended to steal the vehicle.[4]

Whether the defendant had the requisite larcenous intent permanently to deprive the car's owner of the Jaguar was for the jury to decide on all of the facts. Such an intent may be inferred by the jury from all the facts. *Commonwealth* v. *Cabot*, 241 Mass. 131, 143 (1922). *Commonwealth* v. *Subilosky*, 352 Mass. 153, 166 (1967). *Commonwealth* v. *Salerno*, 356 Mass. 642, 648 (1970). "The jury as the trier of fact are free to draw inferences 'unless the inference is either forbidden by some special rule of law, or is declared unwarranted because too remote, according to the ordinary course of events.' 'It is not essential that the inferences drawn from facts or circumstances be necessary inferences.' The inference must only be reasonable and possible." *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785, 791 (1975) (citations omitted). Further, the jury may reasonably rely on their knowledge of human behavior. See *United States* v. *Tejeda*, 974 F.2d 210, 213 (1st Cir. 1992) (factfinders' reasonable inferences may be grounded in an "understanding of human behavior" and "mature experience").

From all of the facts before them in this case, as well as their knowledge of human behavior, the jury could reason-

---

[3]*Commonwealth* v. *Kozlowsky* was cited as authority on the issue of the sufficiency of evidence to prove attempted larceny of a motor vehicle in *Commonwealth* v. *Graud*, 8 Mass. App. Ct. at 916.

[4]At oral argument, counsel for the defendant conceded that he could not distinguish *Commonwealth* v. *Kozlowsky* and that the case appears to be controlling.

ably have inferred the defendant's larcenous intent. It was not too remote for the jury to infer from the facts that the defendant had entered and was about to drive away a highly desirable sports car, left with its motor running, with the intent permanently to deprive the owner of the Jaguar. The fact that a passenger was in the car at the time and that the defendant was nonetheless prepared to drive it away may itself have permitted the jury to infer that the defendant's intent was larcenous. It would not be unreasonable to think that one who wished only to take a car for a little spin would be unlikely to select a car with someone already in it.

Finally, the defendant also argues that the trial judge erred in not giving an instruction expressly stating that "the defendant was entitled to an acquittal if he intended to return the car or to leave it in a place where it might be recovered." Compare *Commonwealth* v. *Hogg,* 365 Mass. 290, 295 (1974). No such instruction was requested at trial, nor was the omission of such an instruction by the judge objected to at trial. We therefore review the omission of such an instruction only to assure that it did not create a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). *Commonwealth* v. *Woods,* 419 Mass. 366, 372 (1995). *Commonwealth* v. *Myer,* 38 Mass. App. Ct. 140, 146 (1995). No such risk is present here.

The judge on numerous occasions in his instructions emphasized that the Commonwealth had the burden of proving beyond a reasonable doubt that the defendant intended to steal the automobile and expressly defined stealing as "the wrongful taking of the motor vehicle of another person with intent to deprive that person of the motor vehicle permanently." Such instructions, taken as a whole, were careful, accurate, and not in error. See *Commonwealth* v. *Burke,* 376 Mass. 539, 544 (1978).

*Judgment affirmed.*