**STATE of Maine**

v.

**George A. FERNALD, Jr.**

Supreme Judicial Court of Maine.

Jan. 4, 1978.

Henry N. Berry III, Dist. Atty., Peter G. Ballou (orally), Deputy Dist. Atty., Portland, Stephen Moriarty (orally), Law Student Intern, for plaintiff.

Daniel G. Lilley (orally), Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

The defendant, George A. Fernald, Jr., stands indicted for aggravated assault with a firearm and robbery with a firearm, in violation of 17–A M.R.S.A. §§ 208 and 651, respectively. This opinion consolidates our disposition of interlocutory appeals by the State from (1) denial by a District Court judge,[1] after an adversary hearing, of the State's application for a search warrant for surgical removal of two metal fragments, allegedly of a bullet, lodged in the defendant's back and (2) denial by the Superior Court of the State's motion for a continuance pending the State's decision whether to appeal the District Court judge's ruling. The defendant moved to dismiss the State's appeal from the District Court judge, alleging that it was taken "in bad faith," and that "the allowance of this appeal would deny him his speedy trial rights."[2] On an expedited schedule, this court ordered the defendant's motion to be briefed and argued at the same time as the merits of the State's appeals.

In view of our conclusion that neither the District Court judge's action in denying the application for a search war-

---

1. Both the statute, 15 M.R.S.A. § 55 (enacted 1965) (1975 Supp.), and Rule 41(a), M.R. Crim.P., give the authority to issue search warrants *not to the District Court generally, but rather to a* "District Court Judge or a complaint justice" who, in the words of the rule, has "jurisdiction of the area wherein the property sought is located."

2. The written motion to dismiss also requested that the Law Court dismiss the State's appeal from the Superior Court order. At oral argument, however, the defendant conceded that the motion to dismiss, bearing only the docket number of the appeal from District Court, did not reach the other appeal.

rant nor the Superior Court's denial of the State's motion for continuance was a "decision, order or judgment . . . or ruling against the State in any pretrial order" within the meaning of the statute authorizing interlocutory appeals by the State, 15 M.R.S.A. § 2115–A(1) (enacted 1968; amended 1971) (1975 Supp.), we dismiss both appeals for want of jurisdiction.[3]

The defendant's indictment stems from an attempted robbery and shootout at the Maine Mall in South Portland. On July 2, 1977, at about 11:30 a.m., two Brinks security men, Carl Green, a messenger, and Donald Orick, a guard, were making a routine cash pickup from the Jordan Marsh department store. As Green, who was carrying the money, stepped off the escalator on the first floor of the store, he was accosted by a man armed with a gun, who demanded the money. When Green refused to comply, the gunman opened fire. Green and Orick exchanged some fifteen shots with the gunman before he fled from the store. Green was wounded. Blood found on the floor and on the door through which the gunman escaped indicated that the gunman had also been shot.

Several hours later, the defendant, Fernald, was admitted to the Maine Medical Center suffering from multiple gunshot wounds in his legs, left arm and shoulder, and abdomen. X-rays taken immediately upon his arrival disclosed the presence of several metallic fragments in the defendant's chest and back. An operation was performed on Fernald that evening, but no fragments were removed. The following morning, Detective Robert Schwartz presented Green (also in the hospital undergoing treatment for his wounds) with six photographs, including one of Fernald. Green positively identified Fernald as the gunman.[4] On the following day, July 3, 1977, the defendant was arrested, and the State subsequently sought and obtained the pending indictment.

On September 8, 1977, Detective Schwartz filed an "Affidavit in Support of a Search Warrant" with Honorable Bernard M. Devine, Judge of the District Court in the Ninth District, a district encompassing the Cumberland County jail where the defendant was being held pending trial. The Detective's affidavit requested authorization to have certain metallic objects, believed to be pieces of a bullet, removed from the defendant's back, "being [by Schwartz's sworn statement] evidence of the said George A. Fernald, Jr.'s presence at the scene of a robbery and aggravated assault in South Portland on July 2, 1977." Detective Schwartz first alleged the facts recited above to establish probable cause for the requested search warrant. He further alleged that Corporal William Manduca of the State Police, an expert in firearms identification, "has tested rounds fired by Carl Green and Donald Orrick [sic] at the time of the incident at Jordan Marsh and states that the weapons they used are such that a bullet fired from one of them (including a fragmented bullet) could be absolutely identified as having come from those particular guns." Prior to ruling on the application, Judge Devine, on the State's motion, held an adversary hearing, at which the State produced the testimony of Dr. Robert Kramer, one of the defendant's post-operative physicians. Dr. Kramer testified, from medical reports and x-rays taken of the defendant during his hospital treatment, that one large fragment is located less than one inch below the defendant's skin, can be physically palpated, and can be removed on an out-patient basis by use of a local anesthetic. With respect to a second large fragment, Dr. Kramer testified that it was approximately two centimeters deeper than the first but that more x-rays would be necessary to determine its precise location and the exact procedures necessary for its removal.

---

**3.** As any appellate court must do when a question of its jurisdiction becomes apparent to it, this court *sua sponte* raised the jurisdictional issue at oral argument.

**4.** Two days later, Orick also unhesitatingly identified the defendant's picture from among six presented to him. When shown the same spread of photographs, however, some six or eight other eyewitnesses were unable to identify the gunman.

The District Court judge denied the State's search warrant application, without making specific findings of fact or conclusions of law. In order to decide whether to appeal that ruling, the State moved for specific findings and rulings on October 3, 1977. On the same day, the State also moved the Superior Court for a ten-day continuance of the trial, then set for October 5, pending the District judge's findings. The Superior Court refused to grant the continuance, and the State appealed that ruling on the morning scheduled for start of the trial. That appeal had the effect of staying further action in the Superior Court. *See* Rule 37(d), M.R.Crim.P. On October 12, 1977, the District Court judge responded to the State's request for findings, concluding that the surgical procedure for removal of either fragment would be an "unreasonable search and seizure" and that the State had failed to show that the fragments could be identified so as to be of evidentiary value at trial. The State promptly took an appeal to the Law Court from the District Court judge's denial of the requested search warrant. In view of our lack of jurisdiction over this appeal, we cannot, however, reach the interesting and, for Maine, novel questions of law presented by the State's request for surgical removal of the metallic fragments from the defendant's back.

The State predicates its right to appeal both the action of the District Court judge and that of the Superior Court upon the statutory authorization contained in 15 M.R.S.A. § 2115–A(1) (enacted 1968; amended 1971) (1975 Supp.), which provides: [5]

> "An appeal may be taken by the State in criminal cases on questions of law, with the written approval of the Attorney General, *from the District Court and from the Superior Court to the law court from a* decision, order or judgment of the court suppressing evidence prior to trial, allowing a motion to dismiss an indictment, complaint or information, quashing an arrest or search warrant or suppress-

ing a confession or admission, or *ruling against the State in any pretrial order.* Such appeal shall be taken within 10 days after such order, decision or judgment has been entered, and in any case before the defendant has been placed in jeopardy under established rules of law. Any appeal which may be taken under this section shall be diligently prosecuted." (Emphasis added)

The critical question is whether either action constituted a "pretrial order" within the meaning of that term in the statute.

■ Prior to enactment of section 2115–A in 1968, the State enjoyed no right to appeal whatever. That condition of the law reflected an historical sensitivity to the defendant's constitutional guarantees of a speedy trial and freedom from being placed in double jeopardy. *See* Comment, *The State Right to Appeal: Has Maine Been Too Cautious?*, 21 Me.L.Rev. 221 (1969). In addition, appellate review of any interlocutory ruling, no matter by whom taken, is an exception to the "final judgment" rule and hence must be justified ordinarily by the presence of special policy considerations. *Cf. State v. Placzek*, Me., 380 A.2d 1010 (December 9, 1977). We recently recognized in *State v. Kelly*, Me., 376 A.2d 840, 843 (1977), that because granting the State a right of review in a criminal prosecution is "so serious and far-reaching an innovation in the criminal jurisprudence,"

> "the question of whether to grant rights of 'review' to the State, in relation either to the final judgment or the interlocutory facets of a criminal prosecution, is to be decided by the Legislature. Further, rights of such substantive importance will not be taken to have been legislatively conferred by indirection or implication but only by legislation explicitly addressing the subject in express language of unmistakably plain meaning."

As *Kelly* suggests, in view of the unprecedented nature of section 2115–A, the scope of the appeal rights conferred upon the State by the legislature are to be strictly construed and not extended beyond the plain and necessary meaning of the grant.

---

5. In the case at bar the Attorney General gave his written approval to both appeals.

■ As originally enacted in 1968, section 2115–A was specific in identifying only four "decisions, orders or judgments" that were appealable to the Law Court; namely, those (i) suppressing evidence prior to trial, (ii) dismissing an indictment, complaint or information, (iii) quashing an arrest or search warrant, and (iv) suppressing a confession or admission. A feature shared by those appealable orders is that a ruling adverse to the State on any of them might well result, either legally or practically, in the termination of an ongoing prosecution, thereby foreclosing any opportunity for this court's review of the correctness of the lower court's decision on the questions of law presented. *See* 21 Me.L.Rev. 221, 235; *Governor's Planning Committee on Criminal Administration*, [Report] 20–21 (1966). In that limited category of instances, the legislature apparently determined that the interests of the State and the public, in obtaining appellate review of the question of law, outweighs the policy against piecemeal litigation and the interest of all concerned in avoiding further delays in the prosecution.[6]

■ By amendment to section 2115–A, the legislature in 1971 granted the State the additional right to appeal from a "ruling against the State in any pretrial order." The State relies upon that language to give this court jurisdiction over the present appeals. Yet, without now determining the exact outer limits of the term "pretrial order," we hold that it does not encompass either a District Court judge's denial of a search warrant or a Superior Court denial of a trial continuance.

■ Plainly, the adjective "pretrial" refers to something more than "coming before trial" as a matter of mere timing.

Each and every order having something to do with a criminal prosecution and in time preceding trial cannot qualify for a potential interlocutory appeal by the prosecution to the highest court of the State.

■ As for the denial of the requested search warrant, the State has no statutory right of appeal for at least two reasons. First, that action was *not* taken by the Superior Court which, after the defendant's indictment, had sole jurisdiction over his trial for the indicted offense. To stretch section 2115–A to treat an "order" of a completely different tribunal to be a "pretrial order" in the criminal case pending in the Superior Court would do violence to the restrictive construction mandated by the statute's history. In the second place, a District Court judge, in acting upon a request for a search warrant, is merely acting in a limited magisterial function. That function alternatively may be exercised by a complaint justice having jurisdiction in the same territory, and without question the State has no right of appeal from a complaint justice's denial of a search warrant. Both the controlling statute, 15 M.R.S.A. § 55, and the controlling Rule 41(a), M.R.Crim.P., make it evident that in performing this function a particular District Court judge, who must qualify by having "jurisdiction of the area wherein the property sought is located",[7] is *not* "the District Court," the single statewide court,[8] from whose adverse "pretrial orders" section 2115–A gives the State a right of appeal. The function of either a District Court judge or a complaint justice in entertaining a search warrant request is merely to determine whether the facts alleged in the supporting affidavits show probable cause for issuing the warrant. His function does not take him beyond the affidavits.[9] Until the

---

6. Of course, the State may not manipulate the device of appeal purposely to delay, abuse, or harass the defendant. *See State v. Brann*, Me., 292 A.2d 173, 184 n. 15 (1972). Section 2115–A(1) itself admonishes that "[a]ny appeal which may be taken under this section shall be diligently prosecuted."

7. *See* n. 1 above.

8. 4 M.R.S.A. § 151 (1964).

9. We realize that in the case at bar the procedure followed by the District judge in holding an adversary hearing on the State's request for a search warrant represented a commendable attempt by the judge and the prosecution to comply with the procedures recently approved in *United States v. Crowder*, 177 U.S.App.D.C. 165, 543 F.2d 312 (1976), for determining

legislature has declared its intent in the most unambiguous way, we will not construe section 2115–A to require the Law Court to hear interlocutory appeals to review the performance of such a limited magisterial function as that involved in issuing search warrants.

Let us now turn to the Superior Court's denial of the State's motion for a ten-day trial continuance. Although that action was taken at a time prior to trial by the same court in which the prosecution is pending and although that court is undoubtedly one from whose pretrial orders section 2115–A gives the State some right to interlocutory appeal, that denial is not of the same significance and consequence as the type of "decision, order or judgment" which section 2115–A specifically lists as appealable. Guided by the familiar canon of *ejusdem generis*, we reiterate that those enumerated decisions are characterized by the strong likelihood (in many instances, a certainty) that a ruling adverse to the State will lead directly to termination of the prosecution. By contrast, it is highly unlikely that the ruling of a presiding justice refusing to grant a motion for a ten-day continuance will be of such consequence to the preparation, conduct, or outcome of the trial. There is nothing to indicate that in the 1971 amendment of section 2115–A the legislature intended to expand the State's right of appeal to pretrial orders of such inconsequential nature as denial of a trial continuance. In view of the long history disfavoring appeals by the prosecution and the significance of those specific rulings which section 2115–A lists as appealable, the legislature's purpose was more likely not to work such an extraordinary expansion of the Law Court's interlocutory review of trial court decisions. In any event, it is certainly not for this court to accomplish that result by statutory construction.

■ Although we dismiss the State's appeals before even reaching the defendant's reason for urging dismissal, namely, his charge that the prosecution has used the appeals in bad faith to deny him his constitutional right to a speedy trial, the seriousness of that charge prevents us from ignoring it. We find nothing whatever before us to support the defendant's charge of bad faith.[10] The issues which the State attempted to raise by its appeals undoubtedly are fairly litigable. *Compare United States v. Crowder, supra* (5–4 decision), *with Adams v. State*, 260 Ind. 663, 299 N.E.2d 834 (1973) (3–2 decision). The total delay of only three months on these appeals, even when added to the three months that elapsed between the defendant's arrest and the State's appeal, cannot by itself constitute a Sixth Amendment violation. *State v. Carlson*, Me., 308 A.2d 294 (1973).

The entry must be:

Appeal from the District Court dismissed.

---

whether to issue a warrant permitting a surgical intrusion into a defendant's body to seize bullet fragments. Nonetheless, the procedure before the District judge did not conform to our frequently reiterated ruling that the decision whether to grant a search warrant must be determined solely from the four corners of the request and supporting affidavits. *State v. Gamage*, Me., 340 A.2d 1 (1975); *State v. Stone*, Me., 322 A.2d 314 (1974); *State v. Cadigan*, Me., 249 A.2d 750 (1969). Federal Criminal Rule 41(c), upon which in 1965 we modeled our Maine Criminal Rule 41(c), H. Glassman, *Maine Criminal Practice* 356 (1967), was amended in 1972 to permit the magistrate considering a request for a search warrant to "require the affiant to appear personally" and "examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit." 406 U.S. 981, 995–96 (1972). Without a comparable amendment of our Maine Rule 41(c), we do not consider that recorded testimony given under oath before the District judge can be treated as "an affidavit sworn to before" that judge as required by the rule.

10. To prevail on his motion to dismiss the appeals, the defendant would have to establish that the prosecution's subjective state of mind is relevant to a claimed violation of his constitutional right to a speedy trial and further that the defendant can raise a claimed "speedy trial" violation by his direct motion to dismiss the appeals, rather than on a motion to dismiss the indictment or on post-conviction habeas corpus. We here do not decide either of those questions.

Appeal from the Superior Court dismissed; remanded to the Superior Court for further proceedings.

DELAHANTY, J., did not sit.

POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ., concurring.