**Harry SMITH, Jr.**

v.

**STATE of Maine et al.**

Supreme Judicial Court of Maine.

Argued June 11, 1981.

Decided July 30, 1981.

Preti, Flaherty & Beliveau, Thomas M. Egan (orally), Portland, for plaintiff.

Michael E. Saucier (orally), Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C. J., WERNICK and GODFREY, JJ., and DUFRESNE, A.R.J.

McKUSICK, Chief Justice.

In 1978, after a jury trial in Superior Court, Washington County, the present petitioner Harry Smith, Jr., was convicted of three counts of receiving stolen property and one of cheating by false pretenses. Smith is now on parole from the resulting concurrent sentences of two-to-four years at Maine State Prison. In this post-conviction proceeding commenced by Smith in May, 1980, the single justice of the Supreme Judicial Court assigned to hear the case denied his petition for habeas corpus and he has taken a timely appeal. We affirm the decision of the habeas justice.

Twice before, Smith has been before the Law Court in connection with these and related criminal charges. He first appeared as appellee in an interlocutory appeal taken by the State from a pretrial order of the Superior Court suppressing certain evidence that had been seized from his Meddybemps junkyard. This court upheld the suppression order. *State v. Smith*, Me., 381 A.2d 1117 (1978) (*Smith I*). The State, deprived by that suppression order of its prime evidence supporting six counts of the fifteen-count indictment, then dismissed those six counts. At his trial on the remaining nine counts, Smith was convicted on four counts, and on his direct appeal this court affirmed those convictions. *State v. Smith*, Me., 400 A.2d 749 (1979) (*Smith II*).

Smith then tried unsuccessfully to obtain a federal habeas corpus writ. After his federal petition was denied on the ground of nonexhaustion of state remedies, Smith commenced the instant post-conviction habeas corpus proceeding in Superior Court. The habeas justice both reviewed the entire record on the earlier direct appeal and also heard testimony given before him by the two attorneys who had represented petitioner and the State before and at trial. Concluding that the total record before him supported none of petitioner's allegations, the justice denied the petition.

## I.

■ Because much of the record upon which the habeas justice reached his decision was documentary, petitioner first asserts on appeal that we are free to make our own findings of fact, independent of those of the Superior Court. We disagree. The habeas justice heard oral testimony from the two attorneys who had participated in petitioner's trial, and recited in his written opinion half a page of factual findings based on that testimony. His further assertion that he would not analyze the extensive written record was merely a recognition that that record set forth historical facts that were plain on their face. Especially in the absence of any request by petitioner for further findings of fact, M.R. Civ.P. 52(a), we attribute to the habeas justice any findings necessarily involved in his decision, even though not articulated, *see Libby v. Lorrain*, Me., 430 A.2d 37, 38 (1981); *State v. Broucher*, Me., 388 A.2d 907, 909 (1978); and we will overturn none of his findings, express or implied, unless they are clearly erroneous, *see Standish v. State*, Me., 320 A.2d 892, 894 (1974).

## II.

■ At the heart of petitioner's present habeas corpus appeal are his claims that his due process rights under both the United States and the Maine Constitutions were violated by the State's failure to move to sever for immediate trial the nine counts of the indictment that were not involved in the State's interlocutory appeal taken in 1976, and by the actions of two Superior Court justices whose pretrial rulings, taken together, stayed all proceedings in the matter until the interlocutory appeal was resolved by the Law Court.

After the Superior Court granted Smith's suppression motion, the State under 15 M.R. S.A. § 2115–A(1) (Supp.Pamphlet 1975) appealed from that Superior Court order. Five days later, notwithstanding that the State had already exercised the absolute right of appeal granted it by section 2115–A(1), the motion justice at the prosecutor's request reported the case to the Law Court

under then M.R.Crim.P. 37A(b),[1] and at the same time stayed all proceedings pending this court's ruling on the merits of the interlocutory appeal.[2]

Meanwhile, on May 14, petitioner's trial counsel filed with the Superior Court a "Motion for Speedy Trial" that stated in its entire substance:

> Now comes the Defendant, Harry J. Smith, Jr. and by his attorneys . . . moves this Honorable Court to order that the trial of this matter take place as soon as it can reasonably be set for hearing.

Petitioner's speedy trial motion was not assigned for hearing on the calendar for the next session of the Superior Court in Washington County in September, 1976. It was not until late October, however, that defense counsel wrote to the Superior Court clerk to ask when the matter would be heard. The motion was thereafter assigned for hearing on November 23, 1976. On that day, a second Superior Court justice, now deceased, heard the motion and denied it. The hearing was not recorded, nor was any motion ever made to put the hearing on the record, even though a court reporter was present. At the conclusion of the hearing, the justice issued the following order:

> November 23, 1976—Hearing had. Appeal still pending in Law Court. Order of [suppression motion justice] dated May 14, 1976 still in effect. State's request for 10-day extension of time for filing brief—not found to be lack of diligence.

Neither the State nor petitioner made any motion for severance of the counts unaffected by the suppression order, either at that or any other time.

Fourteen months later, in January, 1978, this court denied the State's interlocutory appeal. Only then did petitioner move to dismiss the indictment on the ground his speedy trial right had been violated. At the conclusion of a two-part hearing, a third Superior Court justice denied that speedy trial motion, without prejudice to its renewal at or after trial. A fourth Superior Court justice presided at trial. During jury deliberations, he denied petitioner's renewed motion to dismiss.

On appeal, the Law Court affirmed Smith's conviction over his continued objection that his right to a speedy trial had been violated. *Smith II, supra.* In its opinion on that direct appeal from Smith's conviction, this court made an extensive analysis on the basis of the four-part balancing test of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Smith II, supra* at 752–54. The court expressly held that the State was not required to move to sever for immediate trial the nine counts of the indictment that were not involved in the suppression order. The court on that appeal did not expressly address the question whether the justice who presided at the November 23, 1976, hearing on Smith's speedy trial motion in effect deprived petitioner of his right to be heard on that issue by considering himself bound by the stay order entered earlier by the first justice. That question, however, plainly came within the broad ambit of the *Barker v. Wingo* balancing analysis undertaken by the court.

Both questions would thus ordinarily be subject to the rule that issues may not be raised in post-conviction proceedings if they have been "previously or finally adjudicated . . . in the proceeding resulting in the conviction."[3]  14 M.R.S.A. § 5502 (1980) (re-

---

1. The 1977 version of M.R.Crim.P. 37A(b) provided in relevant part:

   If the court is of the opinion that a question of law involved in an interlocutory order or ruling made by it in any action ought to be determined by the Law Court before any further proceedings are taken therein, it may, on motion of an aggrieved defendant or when authorized by statute, upon motion of the attorney for the State, report the case to the Law Court for that purpose and stay all further proceedings except such as are neces-

   sary to preserve the rights of the parties without making any decision therein.

2. Even had the Superior Court justice not expressly so ordered, the action would in any event have been automatically stayed by the State's interlocutory appeal, under the then-effective version of M.R.Crim.P. 37(d). *See State v. Fernald,* Me., 381 A.2d 282, 285 (1978).

3. Petitioner's original speedy trial motion was grounded on the Sixth Amendment to the United States Constitution and by Me.Const. art. I,

pealed and replaced by P.L. 1980, ch. 701). *See Mottram v. State*, Me., 263 A.2d 715, 720–21 (1970) (*res judicata* principles applicable to post-conviction review proceedings); *see also* 15 M.R.S.A. § 2128(1) (Supp. 1980) (successor statute to 14 M.R.S.A. § 5502). However, as to both the issue of the State's duty to move to sever and the question relating to the Superior Court's assertedly undue reliance on the earlier stay order, petitioner has raised in the instant post-conviction proceeding significant new factual material that was not before either the trial court or this court on direct appeal. That material, relating to the November 23, 1976, hearing, is contained in the testimony of the trial attorneys for both petitioner and the State taken at the post-conviction hearing. That November 23, 1976, hearing was not recorded, and thus the attorneys' testimony about what transpired during it is new evidence that has not been made available for review until the present post-conviction proceeding. The exact questions now before us could not, in the unique circumstances of this case, have been fully raised either at trial or on direct appeal and so are properly presented for post-conviction review.

We have accordingly reapplied, as did the habeas justice,[4] the *Barker v. Wingo* four-part analysis to the entire present record in light of the evidence brought out for the first time through the testimony in this post-conviction proceeding of the two trial attorneys. There is nothing in the post-conviction record that leads us to depart in any respect from our prior detailed analysis of the speedy trial issue in *Smith II, supra* at 752–54. We are led inescapably to the conclusion that the fact-finding of the habeas justice was not clearly erroneous and that he properly denied petitioner's claims regarding the State's duty to seek severance of some of the counts of the indictment and the assertedly improper role of the stay order in the Superior Court's denial of petitioner's first speedy trial motion.

## III.

[redacted] Petitioner also seeks post-conviction relief on the ground that his trial attorney's performance in not moving to sever for immediate trial the nine counts of the indictment unaffected by the State's interlocutory appeal violated his right to the effective assistance of counsel. We cannot agree.

As a preliminary matter to this final issue, petitioner and the State agree that the time has come for this court to adopt as its standard for reviewing the adequacy of representation by trial counsel the test applied by the First Circuit and the large majority of the other federal circuits, under which the "quality of a defense counsel's representation should be within the range of competence expected of attorneys in criminal cases." *United States v. Bosch*, 584 F.2d 1113, 1120 n.3, 1121 (1st Cir. 1978). Past decisions of the Maine Law Court authorize post-conviction relief because of ineffective assistance of counsel only upon a showing that counsel's "representation was of such

§ 6. Petitioner continued to base his assertions on those same constitutional provisions throughout trial and on the direct appeal. Although his claims in the present post-conviction proceeding are purportedly based on the due process clauses of the United States and Maine Constitutions, we understand those claims to raise the same substantive issues presented to the Superior Court at trial and to this court on the ensuing direct appeal.

4. The habeas justice made the following findings:

> The time span between the State's appeal, the decision thereon [*Smith I, supra*] and the actual trial is obvious. However, at no time after the ruling denying the motion for speedy trial was it specifically suggested that, A, a trial could be had on the counts not involved in the State's appeal, or, B, that the delay was causing prejudice to the petitioner.
>
> In short, the ultimate fact is that after hearing on the motion both the petitioner (who was on bail) and the State put the case aside until the decision on the State's appeal was rendered. This Court concludes, *from the oral testimony*, that the speedy trial motion was merely a procedural step made for the purpose of technically protecting the record. *It was trial strategy not to file a more specific motion and not to seriously press the issue* since, by tradition, trial delay usually benefits a criminal defendant.

(emphasis added)

poor calibre as to reduce the proceedings to a farce and a sham . . . [or] to make the conviction a mockery or manifest miscarriage of justice." *Bennett v. State*, 161 Me. 489, 499, 214 A.2d 667, 674 (1965).

We need not decide today whether to continue to adhere to the "sham or mockery" standard in Maine. Petitioner's trial counsel's performance satisfied even the more rigorous requirements of the First Circuit test, and the habeas justice so found. The posture of the case at the time of petitioner's successful suppression motion was such as to lead reasonably competent trial counsel to conclude that his client's interests would be best served by delay. At that time, petitioner was free on bail. His father, upon whose help petitioner was hoping to rely in his defense, but who died before the 1978 trial, was in good health showing no signs that his death was impending. Both Smith and his retained counsel were certainly aware of the extra expense in terms of both time and money that would be generated by immediate trial on the nine counts then ready to be tried, followed by a possible separate trial on the six counts affected by the interlocutory appeal. Furthermore, both client and counsel could always hope that during the months that would elapse while the State's appeal was pending key prosecution witnesses might become ever less available. Having no need to prove any case of his own, counsel could reasonably have concluded that he and his client had nothing to lose and possibly much to gain from as much delay as possible.

The record moreover contains positive demonstrations of counsel's effectiveness. Not only did his client prevail on the State's interlocutory appeal from the suppression order, with the result the prosecution had to dismiss what it had thought to be its six strongest counts, but at trial Smith won an acquittal on five of the remaining nine counts. Petitioner's argument that his trial counsel gave him ineffective assistance is,

in short, wholly unsupported by any evidence presented in this post-conviction review proceeding.

The entry must be:

Judgment denying writ of habeas corpus affirmed.

All concurring.