**STATE of Maine**

v.

**Harry SMITH, Jr.**

Supreme Judicial Court of Maine.

Jan. 23, 1978.

Michael D. Seitzinger (orally), Asst. Atty. Gen., Sandra H. Collier, Law Student, Augusta, for plaintiff.

Libhart, Ferris & Dearborn by Wayne P. Libhart (orally), N. Laurence Willey, Jr., Joseph L. Ferris, Brewer, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

ARCHIBALD, Justice.

Acting pursuant to 15 M.R.S.A. § 2115–A(1),[1] the State of Maine has appealed from a Superior Court order suppressing evidence prior to trial, which evidence had been seized on a search warrant issued by a District Court Judge.

We deny the appeal.

Before addressing the basic issue we must first direct our attention to a problem raised by defendant's "Motion to Dismiss Appeal" under Rule 39C, M.R.Crim.P. The defendant contends that (1) the State did not comply with Rule 37A(b), and (2), did not diligently prosecute its appeal as mandated by § 2115–A(1).

On May 6, 1976, the Justice below heard and decided the defendant's "Motion to Suppress." Six days thereafter a "Notice of Appeal" was filed by the State, with the written authorization of the Attorney General attached thereto. The "Notice of Appeal" did not specify by what authority the appeal was taken, although the written approval of the Attorney General did so. On May 14, 1976, the presiding Justice, upon the oral motion of the State, order the case reported to the Law Court pursuant to Rule 37A(b),[2] although he had already made his

---

1. "1. Appeals prior to trial. An appeal may be taken by the State in criminal cases on questions of law, with the written approval of the Attorney General, from the District Court and from the Superior Court to the law court from a decision, order or judgment of the court suppressing evidence prior to trial, allowing a motion to dismiss an indictment, complaint or information, quashing an arrest or search warrant or suppressing a confession or admission, or ruling against the State in any pretrial order. Such appeal shall be taken within 10 days after such order, decision or judgment has been entered, and in any case before the defendant has been placed in jeopardy under established rules of law. Any appeal which may be taken under this section shall be diligently prosecuted." 15 M.R.S.A. § 2115–A(1).

2. Effective October 24, 1977, Rule 37A(b) was amended by deleting that portion which authorized the State to file a motion to report an interlocutory order. This amendment was in response to the holding in State v. Kelly, Me., 376 A.2d 840 (1977).

decision to suppress the evidence. On July 9, 1976, the State filed a "Designation of Contents of Record on Appeal Pursuant to M.R.Crim.Proc. 39(a)" and a "Statement of Points on Appeal Pursuant to M.R.Crim.P. 39(d)."

We addressed a similar fact situation in *State v. Kelly*, Me., 376 A.2d 840 (1977). After considering the legislative history of 15 M.R.S.A. § 2115–A, we reasoned that the

> "Legislature conferred upon the State a substantive right to appeal from interlocutory orders or rulings made in a criminal prosecution which the Legislature intended to be as 'absolute', once there is written approval by the Attorney General, as is the right of the defendant to appeal from a final judgment of conviction."

376 A.2d at 844. We held, therefore, that the State had a statutory right of appeal which is independent of any proceedings by way of interlocutory report.

■ Since, on the record before us, the State had complied with the requirements of 15 M.R.S.A. § 2115–A(1), we have jurisdiction to consider the issues raised by this appeal despite the alleged failure to comply with Rule 37A(b).

The District Court issued a warrant authorizing a search of the defendant's premises located in Meddybemps in Washington County, for "stolen and other property," namely:

> "(i) One (1) Rogers Gooseneck Semi-trailer, Orange in color, Vehicle Identification Number 16677, and parts thereof;
>
> (ii) Trucks-tractors, semi-trailers (box and flatbed), and parts thereof, including diesel and gasoline engines, transmissions, axle assemblies, chassis wheels, engine components, radiators and refrigeration units, but not limited to said diesel and gasoline engines, transmissions, axle assemblies, chassis wheels, engine components, radiators and refrigeration units. (iii) Implements and property used or designed for use to commit the criminal offenses of violation of Title 29, Section 2185, M.R.S.A. and violation of Title 17, Section 3355, M.R.S.A. and implements and property consisting of non-testimonial evidence which will aid in a particular apprehension or conviction for the criminal offenses of violation of Title 29, Section 2185, M.R.S.A. and Title 17, Section 3551, M.R.S.A., including, but not limited to, tap and die sets, books, papers, documents, sales receipts, invoices, ledgers, registration certificates, and records used and relating to the ownership, possession, sale, and transfer of truck-tractors, semi-trailers, and parts thereof."

The affidavit in support of the request for the search warrant was signed and sworn to by a trooper of the Maine State Police and was dated *July 21, 1975.* The warrant issued the same day, was executed on July 22, 1975, and a written inventory [3] of the property taken was returned with the warrant pursuant to Rule 41(d), M.R. Crim.P.

On March 9, 1976, the Washington County grand jury returned a fifteen count indictment charging the defendant with violations of 17 M.R.S.A. § 3551 (Buying, Receiving and Aiding in Concealing Stolen Property), 29 M.R.S.A. § 2185 (Possessing Trailer with no Identification Marks), and 17 M.R.S.A. § 1601 (Cheating by False Pretenses).

---

**3.** "1. 1973 Fruehauf Semi-Trailer (40′), VIN Number HPR472109.

2. 1973 Theurer Cargo Container (40′), VIN Number C29518.

3. 1972 Ford F250 Pick-up Maine Reg. C122570, VIN Number F25YEP85453.

4. 1969 Olds Cutlass Supreme Green/Black, containing VIN Numbers 3368791103940 and 3368791141506.

5. 1973 Gindy (45′) Trailer, VIN Number 99809E.

6. One (1) Cargo Door from an International Truck/tractor, black in color with orange penstripe and letters 'LGF' on it.

7. Fourteen (14) Assorted Metal Identification plates from various types of equipment.

8. One (1) 1975 Registration Certificate issued to above 1969 Olds. VIN Number 3368791141506.

9. One (1) 1975 Registration Certificate issued to above Ford Pick-up Truck VIN Number F25YEP85453.

10. One (1) torn 1973 Mass. Trailer Registration issued to Finans Express of Barre, Massachusetts on 1966 Great Dane Semi-trailer VIN Number 295T33972."

Subsequently the defendant moved to suppress the evidence seized and to quash the search warrant, alleging that the search and seizure was unreasonable and in violation of the 4th–14th Amendments to the United States Constitution, and the Constitution of Maine, art. I, § 5. The Superior Court granted defendant's motion, thus precipitating this appeal.

The State raises three points on appeal, only one of which requires extended discussion in view of our ultimate decision.

Did the affidavit contain sufficient underlying facts to support the issuance of a search warrant?

The State argues there were sufficient facts in the affidavit to support the District Court's finding of probable cause to believe that stolen property was being concealed on the defendant's premises.

Rule 41(b), M.R.Crim.P., sets forth the grounds for issuance of a search warrant as follows:

"(b) Grounds for Issuance. A warrant may be issued under this rule to search for and seize any property:

(1) Stolen or embezzled; or

(2) Designed or intended for use or which is or has been used as a means of committing a criminal offense; or

(3) The possession of which is unlawful;

(4) Consisting of non-testimonial evidence which will aid in a particular apprehension or conviction."

Rule 41(c) M.R.Crim.P., provides in part: "If the judge or complaint justice is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched."

This Court has said that in determining the sufficiency of the affidavit for probable cause the primary concern

"is whether the magistrate had a basis in the affidavit before him for a reasonable inference that the criminal laws were being violated on the premises to be searched . . . or that the proposed search was otherwise permissible under Me.R.Crim.P. 41."

*State v. Gamage*, Me., 340 A.2d 1, 15 (1975).

This Court has often said that the grounds of probable cause required as a necessary prerequisite to the issuance of a search warrant must be contained within the four corners of the supporting affidavit. *State v. Cadigan*, Me., 249 A.2d 750 (1969). *See State v. Fernald*, Me., 381 A.2d 282, n. 9 (1978).

The affidavit before us consists of thirty pages of detailed information designed, in its totality, to show that the defendant was engaging in criminal activity involving the acquisition and sale of stolen truck-tractors, semi-trailers and parts thereof. Our review of the affidavit does not convince us that the judgment of the Superior Court, suppressing the evidence seized, was incorrect as a matter of law.

In reaching that ultimate conclusion we are mindful of our recent holding in *State v. Willey*, Me., 363 A.2d 739, 741–42 (1976), namely:

"Initially, we note that we test the validity of a search warrant by whether the *facts* stated in the affidavit are sufficient to establish probable cause. . . [C]onclusory statements without a recital of the underlying factual circumstances will not suffice. . . .

Further, as more directly concerned with the substantive aspects of probable cause, probable cause to justify the issuance of a search warrant must exist at the time the warrant issues. . . . Thus, circumstances occurring substantially before the issuance of a search warrant can justify issuance of the warrant only if such past circumstances disclose a 'probable cause' of sufficiently continuing nature to authorize, as rational, an inference that the past probable cause is still operative at the time the search warrant is sought. . . . Although events which have occurred close to the time a search warrant is requested have stronger tendency than remote events to show probable cause justifying issuance of the search warrant, . . . whether a

past probable cause is still continuing at the time of the request for a search warrant is not determined merely by the passage of time; it may depend, also, on the particular kind of criminal activity involved, the length of the activity and the nature of the property to be seized. . . . We have refrained, therefore, from prescribing any *per se* rule fixing a specified period as a mandatory maximum time within which, to be valid, a search warrant must be sought after occurrence of the events relied upon to show probable cause; the approach is *ad hoc* in terms of the circumstances of each case. . . ."

The information contained in the affidavit originated from three general sources:
1) personal observation of the affiant;
2) informant;
3) other law enforcement personnel.

### Personal Observation of the Affiant

 *Forty-one* days prior to the application for the warrant the affiant spoke with the defendant at his place of business in Meddybemps and observed therein the cab of a 1972 International truck-tractor and the chassis from which the cab had been separated. There were no identification numbers.[4] While it is true that facts supporting probable cause which are based upon a law officer's personal knowledge are presumed to be reliable, a magistrate must still weigh them for facial sufficiency. *State v. Gamage, supra.* The mere fact that the affiant observed one truck-tractor in defendant's junkyard without identification numbers does not necessarily establish probable cause to believe that the defendant was engaging in criminal activity, particularly where the affidavit disclosed that this 1972 International truck-tractor had been involved in an accident on June 6, 1975, on a nearby highway and had been towed by a wrecker to defendant's place of business.

There is no indication from the recited facts that the defendant was responsible for

removing the identification numbers from the truck-tractor for the purpose of concealment. In fact, the affidavit indicates that the defendant assisted the affiant in locating the 1972 International truck-tractor in his junkyard.

### Informant

 No authority need be cited for the proposition that probable cause to issue a search warrant may be based upon information furnished by an unidentified informant. In the instant case, however, we do not think such information was sufficient to justify a conclusion that there was probable cause to believe the defendant was concealing stolen property on his premises when the warrant issued.

The affidavit contained the following factual recitals relayed by the unidentified informant to the affiant:

1) The defendant asked the informant to buy two crates of eggs, informing him that the eggs had come with a semi-trailer unit he had acquired. The defendant then displayed a Massachusetts registration for the said semi-trailer. The informant referred to the semi-trailer as the "stolen egg trailer." This information was given the affiant on May 7, 1975, but related to a conversation with defendant on April 23, 1975, some *eighty-eight days* before applying for this warrant.

2) The defendant stated to the informant that he had sold a semi-trailer to a person who had recently died and that the deceased's relatives were unable to sell the semi-trailer because there were no serial numbers thereon. The defendant said someone was "checking up" on him. This information was relayed in mid-June, 1975, but referred, without any specificity, to some "previous occasion."

3) The defendant stated to the informant that "they" were checking into a stolen Winnebago trailer and that his father had told him to "cut down" for a while. The defendant also stated his father later told

4. 29 M.R.S.A. § 2185 provides in part that whoever knowingly has in his possession any motor vehicle or trailer from which the manufacturer's serial number has been removed for the purpose of concealment shall be punished by a fine and or imprisonment.

him that things had "quieted down" and that "they had to get things rolling" again. The Winnebago transaction related to an episode occurring on *November 25, 1974.*

4) While at defendant's place of business in June, 1975, the informant had observed a freshly painted Gooseneck low-boy flatbed semi-trailer.

Even if we assume that these facts, as related to the affiant by the informant, are reliable, tested against the standards specified in *State v. Willey, supra,* they do not establish probable cause to believe that the defendant was concealing stolen property on his premises *at the time the search war-rant was issued.* We have said that "[w]hen allegedly criminal conduct is to be penetrated by a search, the search must be based on more than mere suspicion." *State v. Gamage,* Me., 340 A.2d 1, 15 (1975). The information supplied by the informant does not rise above the level of suspicion. In light of this conclusion, we find it unnecessary to discuss whether the affidavit satisfied the requirements of *Aquilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), relating to information supplied by informants.

### Other Law Enforcement Officers

■ The affidavit recited many incidents described to affiant by other law enforcement personnel, including members of the Maine State Police, an F.B.I. agent, Royal Canadian Mounted Police officers, and Massachusetts State Police officers. The activities described by these officers covered areas in Canada, Maine, and Massachusetts but did not relate directly to the area in Meddybemps for which a search warrant was sought. Furthermore, the time span would include events occurring between November, 1974 and April, 1975. While it may be arguably true that the totality of these many seemingly unrelated transactions might suggest some type of past conspiracy between the defendant and at least

two other persons to deal in stolen merchandise at undefined prior times, they do not establish probable cause to believe that on *July 21, 1975, the defendant was so engaged in Meddybemps, Maine.* Reverting to the language of *Gamage,*

"there must be factual circumstances providing a basis for the conclusion that *evidence is present or crimes are occurring in the place to be searched.*" (Emphasis supplied.) 340 A.2d at 15.

### Summary

■ Our review of the affidavit convinces us there was a total lack of probable cause to believe the defendant was engaged in criminal activity at Meddybemps on July 21, 1975. The Superior Court Justice was correct in his ruling.[5]

### Order to Return Seized Vehicles

■ The State argues that it was error to order the seized property restored to the defendant. The argument is twofold.

First, the State contends that since the defendant did not request the return of the seized property, the property should not have been returned. Secondly, the State urges us to apply our rationale for holding in *State v. Cadigan,* Me., 249 A.2d 750 (1969), that illegally seized contraband need not be returned. As distinguished from *Cadigan,* the property here seized was not contraband.

We reject both of the State's arguments.

The written inventory which accompanied the return of the warrant appears in note 3, *supra.*

Rule 41(e), M.R.Crim.P., provides in part:

"A person aggrieved by an unlawful search and seizure may move the Superior Court in the county in which the property was seized for the return of the property."

---

5. Since we have held that the ruling appealed from was correct, we do not need to discuss whether the warrant was defective for lack of specificity. We note that descriptions of property in search warrants which merely use generic terms have certain limitations and, under

given circumstances, may be constitutionally deficient. *See United States v. Klein,* 565 F.2d 183 (1st Cir. 1977), and cases therein cited. Whether the items described in paragraph (ii) of the warrant fall into this classification we need not decide.

The defendant moved pursuant to Rule 41(e), M.R.Crim.P., to suppress the evidence taken but did not request the return of the seized property. The Superior Court, after granting the defendant's motion to suppress, sua sponte ordered the property seized returned to the defendant. We can see no reason for preventing this action. The language of Rule 41(e), M.R.Crim.P., does not make a request for return of property mandatory nor was the property seized contraband.

In *State v. Cadigan*, Me., 249 A.2d 750 (1969), we held that even though the defendants were aggrieved by an unlawful search and seizure, they were not entitled to an order for the return of the property seized because it was contraband, namely, illegal drugs and a quantity of marijuana. The mere possession of these items was unlawful and, therefore, the defendants had no right to their return. The property seized in the instant case was not contraband which was unlawful to possess.

In fact, there is no evidence from which one could conclude that the property seized was stolen and, therefore, "subject to lawful detention" (Rule 41(e)) by the State. The Superior Court correctly ruled that it must be returned to the defendant.

The entry is:

State's appeal denied.

Remanded to Superior Court for further proceeding.

DELAHANTY, J., sat at argument and conference but did not otherwise participate.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.