**STATE of Maine**

v.

**Harry SMITH, Jr.**

Supreme Judicial Court of Maine.

April 19, 1979.

Michael E. Povich, Dist. Atty., Michael D. Seitzinger (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Libhart, Ferris, Dearborn & Willey by Joseph L. Ferris (orally), Brewer, Wayne P. Libhart, Ellsworth, for defendant.

Before McKUSICK, C. J., POMEROY, ARCHIBALD, DELAHANTY and GODFREY, JJ., and DUFRESNE, A. R. J.

ARCHIBALD, Justice.

The Washington County Grand Jury on March 9, 1976, returned a fifteen-count indictment against the defendant, charging him with ten counts of receiving stolen property, 17 M.R.S.A. § 3551;[1] two counts of cheating by false pretenses, 17 M.R.S.A. § 1601;[2] and three counts of possessing a

---

1. Pertinent portions of section 3551 provided:

   Buying, receiving or concealing; restoration of property; subsequent conviction

   Whoever buys, receives or aids in concealing stolen property, knowing it to be stolen, shall be punished:

   .    .    .    .    .

   2. Value exceeds $500. If the value thereof exceeds $500, by a fine of not more than $1,000 or by imprisonment for not more than 5 years.

   17 M.R.S.A. § 3551 (repealed, P.L.1975, ch. 499, § 19; present counterpart contained in 17–A M.R.S.A. § 359).

2. 
   Cheating by false pretenses

   Whoever, designedly and by any false pretense or privy or false token and with intent to defraud, obtains from another any money, goods or other property, the making of a loan or credit, the extension of credit, the discount of an account receivable or what is represented to be an account receivable, or the making, acceptance, discount, sale or indorsement of a bill of exchange, bank check or promissory note, or his signature to any written instrument, the false making of which is forgery, or whoever knowingly, and with intent to defraud, sells, conveys, mortgages or pledges to another personal property on which there is an existing mortgage or to which he has not title, without notice to the purchaser of such mortgage or of such want of title, is guilty of cheating by false pretenses and shall be punished by a fine of not more than $500 or by imprisonment for not more than 7 years. A promise, if unconditional and made without present intention of performance, will constitute a false pretense within this section.

   17 M.R.S.A. § 1601 (repealed, P.L.1975, ch. 499, § 8; present counterpart contained in 17–A M.R.S.A. § 354).

trailer without proper identification markings, 29 M.R.S.A. § 2185. Following a suppression order by a single justice, upheld by this court in *State v. Smith,* Me., 381 A.2d 1117 (1978), the State moved to dismiss three counts of receiving stolen property and all counts relative to violation of 29 M.R.S.A. § 2185.

In a subsequent jury trial the defendant was found guilty of three counts of receiving stolen property and one count of cheating by false pretenses. The defendant was acquitted on the remaining charges. From the entry of judgment of conviction upon each of the four counts the defendant has appealed, asserting essentially four reasons therefor:

(I) denial of a speedy trial;

(II) insufficient evidence to warrant the jury's conclusion beyond a reasonable doubt that the defendant knew a 1972 Steco dump trailer, a 1972 Hill dump trailer and a 1965 Strick semi-trailer, which were the vehicles identified in the counts of indictment upon which he was convicted, were stolen;

(III) judicial error in refusing to charge the jury as requested;

(IV) abuse of judicial discretion in refusing to impose sanctions upon the State for its failure to provide certain vehicles for the defendant's inspection prior to trial pursuant to a discovery order.

We deny the appeal and deal with each of appellant's points sequentially.

**I**

On March 14, 1976, two days after the State had filed its notice of appeal from the suppression order, the defendant filed a pro forma "Motion for a Speedy Trial" that did not state any particular prejudice that the defendant might suffer on account of a delay in his trial. Asserting a violation of his right to a speedy trial, the defendant, on February 15, 1978, filed a "Motion to Dis-

miss" the charges against him. Following an evidentiary hearing the justice below concluded that the defendant had failed to demonstrate any prejudice and denied his motion. After the presentation of all evidence at trial, the defendant renewed his motion, which was again denied. The appellant contends that the presiding justice erred in refusing to grant this motion.

We disagree.

■■■■ The denial of the right to a speedy trial, guaranteed by the Sixth and Fourteenth Amendments of the Constitution of the United States and Article I, Section 6 of the Constitution of the State of Maine, has but one extremely harsh remedy, dismissal of the charges. *Strunk v. United States,* 412 U.S. 434, 440, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1976); *State v. Steeves,* Me., 383 A.2d 1379, 1381 (1978). The presiding justice's ruling upon the appellant's motion must necessarily, therefore, be based upon his determination that the appellant's right to a speedy trial was not impermissibly infringed. The assessment of whether the appellant was denied his right to a speedy trial necessitates an *ad hoc* balancing of four factors: (A) length of delay, (B) reason for delay, (C) the appellant's assertion of his rights and (D) prejudice to the appellant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Steeves, supra* at 1381; *State v. Carlson,* Me., 308 A.2d 294, 298 (1973).

**A. Length of Delay.**

■■■■ Preliminary to consideration of the remaining three factors we must find that a presumptively prejudicial period of time has elapsed between the time of the appellant's indictment and trial. In this case the appellant's trial did not commence until twenty-five months after his indictment on those charges. We find this a sufficiently long period of time[3] to be presumptively preju-

---

**3.** The State contends that periods of time attributable to the defendant's motions or the State's appeal of the suppression order should be subtracted from the twenty-five months before determining whether a "presumptively

prejudicial" period of delay exists. The analysis proposed by the State would essentially cause a second factor, reasons for the delay, to be considered with the length of the delay independently from the matters of defendant's preju-

dicial, thereby triggering consideration of the other relevant factors. *Compare United States v. Greene*, 578 F.2d 648, 655 (5th Cir. 1978) (thirty-month delay); *United States v. Herman*, 576 F.2d 1139, 1145 (5th Cir. 1978) (twenty-two month, twenty-day delay); and *United States v. Pitts*, 569 F.2d 343, 347 (5th Cir. 1978) (two and one-half year delay), *with State v. Catlin*, Me., 392 A.2d 27, 32 (1978) (five and one-half months). The length of delay in this case, however, is not so inordinate as to require a per se finding of a denial of a speedy trial. Delays longer than twenty-five months have not resulted in a deprivation of a speedy trial. *See, e. g., Barker v. Wingo, supra* (five years); *United States v. Greene, supra* (thirty months); *Georgiadis v. Superintendent, Eastern Correctional Facility, Napanock, N. Y.*, 450 F.Supp. 975, 977 (D.C. N.Y.1978) (fifty-four months).

## B. Reason for the Delay.

■ Of the twenty-five months that elapsed from the time of his indictment to the commencement of the appellant's trial, ninety-nine days were attributable to the appellant's motions for discovery, suppression of evidence and dismissal. The delay occasioned by appellant's motions cannot be charged against the State and must be weighed against the appellant's claim of a speedy trial violation. *Georgiadis v. Superintendent, Eastern Correctional Facility, Napanock, N. Y., supra; State v. Lewis*, Me., 373 A.2d 603, 609 (1977); *cf. State v. Heald*, Me., 393 A.2d 537, 543–44 (1978) (statutory right to speedy trial).

Over twenty months of the twenty-five month delay were necessitated by the State's appeal of the order suppressing unlawfully seized evidence. With the exception of an extension of time in which to file its brief,[4] the State prosecuted its interlocutory appeal within the time frames established by the Maine Rules of Criminal Procedure. The State filed its notice of appeal

on May 12, 1976, and presented oral argument on December 17, 1976. This court issued its opinion on the interlocutory appeal thirteen months later on January 23, 1978, a delay that the State cannot be held to have anticipated.

■ An interlocutory appeal undertaken by the prosecutor in good faith without attempting to tactically outmaneuver a defendant is generally an appropriate reason for delay. *United States v. Herman, supra; United States v. Jackson*, 508 F.2d 1001, 1005 (7th Cir. 1975); *State v. Fernald*, Me., 397 A.2d 194, 196 (1979). Public justice demands that the State be allowed to litigate an issue important to its case against a defendant. *United States v. Jackson, supra.*

■ Appellant argues, however, that the State should have moved to sever the prosecution of the six counts of the indictment to which the suppressed evidence was relevant from the remaining nine counts that the State ultimately brought to trial. That the State might have severed its prosecution of the appellant, thereby obviating the delay of the interlocutory appeal which was relevant only to the six counts that the State subsequently moved to dismiss, militates somewhat against the State's contention that the appeal was a legitimate reason for delay. The interests of judicial economy through avoidance of the duplication of evidence, time and energy of two trials, however, would mandate a joint trial upon all counts of the indictment if possible. Since the appellant did not seek to sever the counts and proceed to trial immediately upon the nine counts unrelated to the interlocutory appeal, the State, anticipating a successful appeal, could rationally conclude that the appellant did not desire to bifurcate his defense efforts. The State, therefore, acted reasonably in its reluctance to move for a severance.

---

udice and the assertion of his right to a speedy trial. If enough of the delay could be attributed to the defendant or otherwise justified, no further analysis would be required.

4. The justice who granted the State's motion for an extension expressly found that the extension was not made necessary by a lack of diligence.

That the State lost its appeal of the suppression orders does not demonstrate that the issues raised therein were not fairly litigable. We consider the questions examined in *State v. Smith, supra,* to have been far from settled and represented legitimate inquiries worthy of an interlocutory appeal. The State's appeal manifested no indicia of anything less than a good faith attempt to obtain a final determination upon an important point of law.

C. Defendant's Assertion of his Right to a Speedy Trial.

■ Although the appellant formally demanded a speedy trial some twenty-three months prior to the commencement of his trial, the timing of his demand does not support a conclusion that the appellant was suffering any prejudice from delay of his trial at the time of his assertion or that he foresaw possible prejudice. The submission of the appellant's "Motion for a Speedy Trial" two days after the State filed its notice of appeal might be construed as an attempt to chill the State's right to appeal the then pending suppression order. No assertion of actual or possible prejudice that the appellant might suffer was contained within the "Motion for A Speedy Trial," nor did the appellant move for a severance of the six counts of the indictment that were related to the suppression order. For these reasons the appellant's pro forma demand for a speedy trial does not give strong support to his claim or denial of a speedy trial.

D. Prejudice to the Defendant.

■ In attempting to evaluate the prejudice that a prolonged pretrial period might have caused to the appellant we must consider at least three factors: (1) oppressiveness of pre-trial incarceration; (2) anxiety and concern of the accused, and (3) impairment of the defense. *Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. 2182; *State v. Steeves,* 383 A.2d at 1384. Findings made relative to these interests necessarily involve historical facts and will be overturned only when clearly erroneous. *Cf. State v. Cefalo,* Me., 396 A.2d 233, 240 (1979) (findings relative to identification evidence).

■ The presiding justice found that the defendant had never been incarcerated prior to trial. Finally, the justice below found that although a potential for prejudice existed the defense had not actually been impaired. In so ruling the presiding justice must necessarily have viewed as incredible the appellant's testimony relative to the ability of his father, Harry Smith, Sr., who died unexpectedly prior to trial, to provide exculpatory documentary evidence. In light of the presiding justice's opportunity to view the defendant's demeanor as he testified, his facial expressions and verbal intonations, the failure of the defense to present Harry Smith, Sr.'s bookkeeper and the inexplicable failure of the appellant to obtain the exculpatory evidence within the twenty-one months after his indictment and prior to his father's death, we do not believe to be clearly erroneous the presiding justice's finding that the delay did not actually prejudice the defense.

■ After making an ad hoc balancing of the above listed factors, we conclude that the appellant's right to a speedy trial was not impermissibly infringed. The length of the delay between indictment and trial was not inordinate, and the State's reasons for the delay were justifiable. Although the appellant did assert his right to a speedy trial, the timing and form of his demand do not suggest an actual prejudice on account of the delay. Finally, the presiding justice found an absence of actual prejudice. None of the factors, therefore, weigh heavily in appellant's favor and a balancing clearly indicates no depreviation of the appellant's speedy trial rights.

II

■ Having moved for a judgment of acquittal based upon the insufficiency of the evidence, M.R.Crim.P. 29(a), at the close of the prosecution's case and having renewed that motion at the conclusion of the presentation of all evidence, the appellant has preserved for our consideration on appeal the question of the sufficiency of the

evidence. *State v. James*, Me., 312 A.2d 531, 533 n.3 (1973); *State v. Pratt*, Me., 309 A.2d 864, 865 (1973). The appellant principally contends that sufficient evidence was not presented upon which the jury might rationally conclude beyond a reasonable doubt that the appellant had knowledge that the trailers listed in Counts VI, VII, and XIV were stolen, a requirement of 17 M.R.S.A. § 3551, or that he knew that he did not have title to the trailer identified in Count XV, a requirement of 17 M.R.S.A. § 1601.

We disagree.

In reviewing the evidence in this case we must examine it in a light most favorable to the State. *State v. Dancoes*, Me., 387 A.2d 25, 26 (1978); *State v. Jackson*, Me., 317 A.2d 814 (1974). Moreover, in proving the *mens rea* requirements for 17 M.R.S.A. §§ 3551 and 1601, the State need present only evidence that the appellant was aware of circumstances that would cause him to subjectively entertain the belief that the trailers were stolen. *State v. Beale*, Me., 299 A.2d 921, 925 (1973). In attempting to determine whether the appellant knew that the trailers were stolen, the jury could evaluate the intelligence of the appellant from his appearance and testimony and consider what conclusions a person of his capacity would make based upon the information available to him. *Id.*

### 1965 Strick Flatbed Semi-trailer

With respect to a 1965 Strick flatbed semi-trailer, the subject of Counts XIV and XV, the following proof was presented: An employee of the owner of the trailer, Harborside Transport, Inc., last saw the trailer on November 7, 1974, in its parking space at Harborside's Rhode Island lot. The trailer was observed in December 1974 in the appellant's junkyard where it had recently been painted. The trailer's headboard, which was of a distinctive design, and the public vehicle identification number [5] had been removed. Following negotiations with Harry Smith, Sr., and the appellant, one Michael Hanson received the trailer upon payment of three hundred dollars to the appellant.[6] Mr. Hanson did not receive a bill of sale for the trailer that he considered to be worth $1,000.00 in its *partially dismantled* condition.

From its distinctive paint design the cab and nose of a Mack tractor were identified as parts of the Mack tractor last seen in Rhode Island attached to the 1965 Strick semi-trailer. The parts were discovered in a town not far from appellant's junkyard in another trailer with another Mack tractor cab and barrels of scrap metals, similar to materials bought and sold by the appellant. The doors on the trailer were secured by two new locks. The appellant had claimed an interest in this trailer, which had its vehicle identification number tag attached in a crooked fashion.

Since the appellant was in charge of the day-to-day operation of the junkyard and was responsible for the registration of the business' vehicles, a task requiring ascertainment of the vehicle identification number, the jury could rationally conclude that the appellant was cognizant of the fact that the 1965 Strick semi-trailer was stolen.

### 1972 Steco Dump Trailer

Together with the appellant's relationship to the junkyard business and his duties involved with registering its vehicles, the following circumstances relevant to a 1972 Steco dump trailer, the subject of Count VI, justify the jury's determination that the appellant knew that the trailer was stolen: The dump trailer was removed from its parking space at SCA Disposal Services of

---

5. A primary or public vehicle identification number in the form of a small plate is typically placed on a front corner of a trailer. The manufacturer also places a secondary or hidden vehicle identification number on a separate part of the trailer.

6. Mr. Hanson also testified that as part of the deal for the trailer he was to deliver seven hundred dollars' worth of scrap metal to the appellant. In light of the self-serving nature of this portion of Mr. Hanson's testimony, however, the jury might have chosen to disbelieve it.

New England sometime on the weekend of May 10, 1974, between 5:30 p. m., Friday, and 8:00 a. m. on Monday, May 13, 1974. The trailer when discovered was without a public vehicle identification number and had apparently been abandoned. The dump trailer had been in use by the appellant and his father, and its appearance had been altered by reducing the height of the trailer's sideboards and removing steps on the front of the trailer. The formerly *red* trailer had also been repainted *silver.*

### 1972 Hill Dump Trailer

With regard to a 1972 Hill semi-trailer that was the subject of Count VII, the following facts were elicited relative to the appellant's awareness that the trailer was stolen: The registration number plate found on the 1972 *Hill dump trailer* was the plate assigned to a *1956 Dorsey tank-type trailer* that the appellant had registered. The Hill dump trailer was also without a public vehicle identification number. In view of defendant's responsibility for registering his business' vehicles, manifested by his signature on the 1956 Dorsey's registration certificate, and the necessity of ascertaining a vehicle's identification number in order to register it, the jury could rationally conclude that the appellant was aware that the Hill dump trailer was stolen.

### III

Appellant claims that the presiding justice erred in refusing to give the following seasonably requested instruction:

The mere fact in and of itself that the defendant is here charged with receiving or aiding in concealing several items of stolen property over a period of time is not evidence that he knew that any particular item was in fact stolen.

■ A trial justice, however, need not give a requested instruction that properly states a point of law if the justice has otherwise covered the content of the requested instruction. *State v. Wallace,* Me., 333 A.2d 72, 80 (1975); *State v. Mimmovich,* Me., 284 A.2d 282, 287 (1971). Within his instruction the justice below made the following relevant comments:

First of all, it is very important that a defendant in a criminal case is presumed to be innocent of the crime. He begins the trial with an absolutely clean slate. This presumption of innocence alone is sufficient for a finding of not guilty, unless the jurors are convinced beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all the evidence in a case.

The presumption of innocence is a forceful way of saying that the State must prove guilt beyond a reasonable doubt, and *no inference is to be drawn against the defendant because of his arrest, the fact he has been indicted,* or the fact he is present in court defending himself against these charges.

Now, *the indictment itself is not evidence.* It is only a vehicle or device which is employed for the purpose of setting in motion the criminal process. It is a way of informing the defendant of the nature of the accusation against him so he can prepare a defense in the trial.

. . .

Now, in making a determination in this case, you must consider each count one at a time to make a judgment, and *consider each of the elements that the State must prove according to the standards, beyond a reasonable doubt,* with respect to each count. . . . In order for you to find the defendant guilty as charged, you have to find, as I indicated, beyond a reasonable doubt that the defendant actually knew that the truck parts and trailers as charged in the indictment were stolen at the time he received or aided in concealing them. *The State is required to prove at that time the defendant himself actually knew that the parts or the vehicles involved were in fact stolen.* [emphasis supplied]

■ Having also detailed the analysis to be applied in determining whether the defendant subjectively realized that the trailers were stolen, the justice below clearly and completely stated in his charge to the jury the point of law contained within the

requested instruction. Since the substance of the requested instruction was covered otherwise, it was unnecessary for the trial justice to give the specific instruction in the language suggested by defense counsel. *State v. Palumbo*, Me., 327 A.2d 613, 616 (1974); *State v. Carvelle*, Me., 290 A.2d 190, 193 (1972).

## IV

Following a hearing upon the defendant's "Motion for Discovery and Inspection" in which the defendant, pursuant to Rule 16, M.R.Crim.P. requested permission to inspect those items described in the indictment, without objection the presiding justice allowed inspection as to all items still in the possession of the State or still available to the State. The next day defendant's counsel wrote to the attorney for the State and requested that the State make available those items that had *already* been returned to their owners. Nothing further relative to the justice's order occurred until the first day of trial, at which time the defendant moved for dismissal of the indictment. Taking notice of the State's attempt to make the vehicles available for inspection and the ability of the defendant to move for a continuance, the presiding justice denied the defendant's motion for sanctions.

■ For several reasons we find no error in the ruling of the justice below. First, unless the State acted in bad faith in putting the vehicles out of the possession of the office of the prosecuting attorney, a contention not advanced by the appellant, the State had no duty to provide for inspection of objects outside of the "possession, custody or control of the state."[7]

The intendment of Rule 16(a) was never to cause attorneys for the State to ferret out material that is equally available (or unavailable) to all parties. Rather the function of Rule 16(a) was to make available upon motion material within the office of the attorney for the State. *State v. Heald*, Me., 393 A.2d 537, 541 (1978); *State v. Toppi*, Me., 275 A.2d 805, 812 (1971). Clearly the trailers once returned to their owners were as accessible to the appellant as to the State.

■ Second, the State did not fail to comply with the justice's order as it might be fairly interpreted, to provide those items not at that time returned to their owners. The defendant having failed to seek a more explicit order compelling discovery, dismissal or other sanctions would not be appropriate.

■ Finally, assuming *arguendo* a failure by the State to comply with the discovery order, we do not believe the appellant was prejudiced. The justice below expressed his receptiveness to a motion for a continuance, but the appellant determined not to move for a continuance. The basis of appellant's decision was a purely tactical matter, the preservation of the strength of his argument relative to denial of a speedy trial. During trial the appellant had an opportunity to inspect each of the vehicles identified in the counts upon which he was convicted. The appellant, in fact, had ample opportunity to examine the vehicles in order to cross-examine the witnesses upon matters relative to the trailers. The presiding justice, therefore, clearly acted within the bounds of his discretion in refusing to impose sanctions against the State.

The entry is:

Appeal denied.

Judgments affirmed.

---

7. Rule 16, M.R.Crim.P., was amended effective January 3, 1978, and now provides:

(1) *Duty of the Attorney for the State.* Upon the defendant's written request, the attorney for the State, except as provided in subdivision (3), shall allow access at any reasonable time to those *matters specified in subdivision (2) which are within the attorney for the State's possession or control. The attorney for the State's obligation extends to matters within the possession or control of* any member of his staff and of any official or employee of this State or any political subdivision thereof who regularly reports or with reference to the particular case has reported to his office. In affording·this access, the attorney for the State shall allow the defendant at any reasonable time and in any reasonable manner to inspect, photograph, copy, or have reasonable tests made.

Rule 16(b), M.R.Crim.P. (emphasis supplied)

WERNICK and NICHOLS, JJ., did not sit.

DUFRESNE, A. R. J., sat by assignment.