STATE of Maine

v.

Raymond CURRIER.

Supreme Judicial Court of Maine.

Argued Jan. 8, 1987.
Decided Feb. 20, 1987.

Paul Aranson, Dist. Atty., Craig T. Gardner, Law Student Intern, Rodney A. Shain (orally), Asst. Dist. Atty., Portland, for plaintiff.

Murrough H. O'Brien (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, SCOLNIK, and CLIFFORD, JJ.

SCOLNIK, Justice.

The defendant, Raymond Currier appeals from a judgment entered by the Superior Court (Cumberland County) convicting him of unlawful trafficking in a schedule Z drug, 17–A M.R.S.A. § 1103 (1983) (Class C) and theft by receiving stolen property, 17–A M.R.S.A. § 359 (1983) (Class C) after a jury found him guilty of those offenses. He challenges the judgments by contending 1) that marijuana admitted at trial should have been suppressed because it was seized in violation of the Fourth Amendment to the United States Constitution and 2) that the State's evidence was insufficient to convict him of theft by receiving. For the reasons set forth herein, we affirm the conviction of unlawful drug trafficking, but vacate the conviction of theft by receiving.

I.

On March 6, 1985, an informant told Bruce Chase, a patrolman with the Portland Police Department, that Currier would drive a blue Nova to 62 Waterville Street in Portland and deliver three pounds of marijuana to that address. Chase had received reliable information from this informant in the past. On March 7, 1985, the informant told Chase that the delivery would occur that evening. Chase undertook surveillance of 62 Waterville Street that evening and observed Currier park a blue Nova across the street from 62 Waterville Street, enter the front door with a brown paper bag, and leave a few minutes later without the bag. According to Chase, Currier then drove away at a high speed. At about the same time, Chase received a prearranged, non-verbal signal from his informant that Currier had delivered the marijuana as expected. Chase pursued Currier and radioed to police officers in a cruiser stationed nearby to stop Currier's car because he believed a drug transaction had taken place.

The police in the cruiser stopped Currier's car and ordered him out of the vehicle. Chase, who had pulled up behind the police cruiser, asked Currier for his license and registration. Observing that Currier had driven erratically, that his eyes were bloodshot, he was unstable on his feet, and was waving his hands back and forth, Chase placed him under arrest for operating under the influence. Chase did not notice alcohol on Currier's breath or that Currier's speech was slurred and did not require Currier to take a breath test. Because he had been told that Currier was a gun dealer, Chase then searched the defendant's person as he was concerned about his own personal safety. He found a small amount of marijuana in a plastic bag and a bottle of valium tablets. He then informed Currier that he was also under arrest for possessing marijuana and valium. Currier was taken to the Portland police station for booking, and Chase returned to Waterville Street to meet with his informant.

At the station, police officers found additional items on Currier's person including about $4,000 in cash and a pouch containing a diamond ring, two small diamonds and a large diamond. Because the chemical test revealed no trace of alcohol in Currier's blood, the police did not file a complaint against him for "OUI."

Meanwhile, upon meeting his informant at Waterville Street, Chase was told by the informant that Currier had delivered marijuana at 62 Waterville Street and that Currier had six more pounds in the Nova.

The Nova was impounded by the Portland Police. Chase submitted an affidavit for a warrant to search the Nova, including its locked trunk. On March 8, the warrant was issued by a District Court judge and executed by Chase. He found approximately seven pounds of marijuana inside a duffle bag and an empty diaper bag in the trunk of the car.

A two count indictment was entered against the defendant on April 5, 1985. Count I charged him with trafficking in a schedule Z drug, "namely, more than 2 pounds of marijuana." Count II charged him with retaining "the property of J.C. Penney ..., namely a diamond ring, of value of more than Five Thousand Dollars ..., believing that it had probably been stolen, with intent to deprive the said owner thereof." Currier was arraigned on

May 2, 1985 and pleaded "not guilty." He filed a motion to suppress the evidence seized from him and from his car. That motion was denied.

The marijuana found in the trunk of the Nova was introduced at trial. The State did not introduce into evidence the small bag of marijuana, the valium, or the pouch of jewels found on Currier's person at the time of his arrest. A narcotics officer with the Portland Police Department testified that patrolman Chase gave him the pouch containing a diamond ring, two small diamonds, and a large diamond. Chase testified that one of the diamonds found on Currier "had been reported stolen by J.C. Penney in South Portland." Ellen Engwin, an employee of J.C. Penney, testified that she was familiar with a diamond stolen from the store on March 1, 1985 and that in mid-March, 1985, she identified a diamond brought to her by a detective from the South Portland Police Department as the one stolen on March 1.

The jury found Currier guilty on both counts of the indictment.

## II.

After hearing the defendant's motion to suppress, the Superior Court concluded that there was insufficient evidence to arrest Currier for operating while under the influence, but that Chase had probable cause to stop Currier's car because of the informant's non-verbal signal that a drug transaction had occurred. The court found that the signal gave Chase sufficient probable cause to stop the car and search it for contraband, either on the spot or after impoundment at the police station pursuant to a warrant.

■ On appeal, Currier argues that because the OUI arrest was not lawful, evidence obtained from the subsequent body and vehicle searches was inadmissible and should have been suppressed. He contends that the OUI arrest was simply a pretext used by Chase to conduct a thorough search of his person and his automobile.

Without addressing the validity of the OUI arrest, we find that the Superior Court did not err in denying Currier's motion to suppress.

At the time Chase ordered the police unit to stop the Nova he clearly had probable cause to believe that a crime had been committed. The stopping of the vehicle did not violate Currier's Fourth Amendment rights because Chase was "able to point to specific and articulable facts which, taken together with rational inferences from those facts" warranted the intrusion. *State v. Rand,* 430 A.2d 808, 819 (Me.1981). *See Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). Facts supporting the existence of that probable cause included information and a signal from a reliable informant that delivery of marijuana had occurred, *see Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and reckless driving by Currier, *see generally New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *Cf. State v. Garland,* 482 A.2d 139, 142 (Me.1984) (investigative stops are unlawful unless based upon specific and articulable facts and inferences warranting reasonable suspicion of criminal conduct).

■ Regardless of the validity of the arrest for OUI, Chase's pat-down of Currier was justified under the exigent circumstances of the situation. *See Terry v. Ohio,* 392 U.S. at 27–28, 88 S.Ct. at 1883. Upon finding marijuana in Currier's pocket, the officer had probable cause to believe that there was marijuana in the car. Accordingly, he could then and there have conducted a warrantless search of the entire vehicle. *United States v. Ross,* 456 U.S. 798, 807–09, 102 S.Ct. 2157, 2163–64, 72 L.Ed.2d 572 (1982).[1] In choosing to impound the vehicle and await a valid search warrant, Chase acted in a way that ensured Currier's Fourth Amendment rights, perhaps even more than was necessary. *See Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419

---

1. Such a probable cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officer. *United States v. Ross,* 456 U.S. at 808, 102 S.Ct. at 2164.

(1970).[2] Given the reliable information Chase had about the marijuana delivery, coupled with his discovery of marijuana on Currier's person, we are satisfied that he had sufficient probable cause, directed at the entire vehicle, to justify the impoundment of the Nova and the detention of Currier while a valid warrant was obtained and a search of the car carried out.[3]

### III.

We now turn to the question of whether there was sufficient evidence to convict Currier for theft by receiving.

Section 359 of Title 17–A M.R.S.A. (1983) provides:

§ 359. **Receiving stolen property**

1. A person is guilty of theft, if he receives, retains or disposes of the property of another knowing that it has been stolen, or believing that it has probably been stolen, with the intention to deprive the owner thereof.

2. As used in this section, "receives" means acquiring possession, control or title, or lending on the security of the property. For purposes of this section, property is "stolen" if it was obtained or unauthorized control was exercised over it in violation of this chapter.

■ To convict a defendant of theft by receiving the State must convince the jury beyond a reasonable doubt that the defendant 1) received, retained or disposed of property of another; 2) knowing or believing that the property was stolen; 3) with the intent to deprive the owner thereof. *State v. Viger,* 392 A.2d 1080, 1085, n. 5 (Me.1978). *See also State v. Creamer,* 379 A.2d 733, 734 (Me.1977). To prove the requisite *mens rea* for this crime, the State must show that the defendant was aware of circumstances that would cause him to entertain the subjective belief that the property was stolen. *See State v. Smith,* 400 A.2d 749, 755 (Me.1979) (construing 17 M.R.S.A. § 3551 (repealed)).

■ Currier argues that the State's evidence was insufficient to convince the jury that he was guilty, beyond a reasonable doubt, of theft by receiving. To rule in favor of Currier on this issue, this Court must conclude, after viewing the evidence in the light most favorable to the State, that the jury could not have rationally found the essential elements of the crime beyond a reasonable doubt. *See State v. Barry,* 495 A.2d 825, 826 (Me.1985).

■ Having thoroughly reviewed the evidence presented at trial, we conclude that the jury could not rationally have found beyond a reasonable doubt that Currier was aware of circumstances that would cause him to entertain the subjective belief that the property in his possession was stolen. *Cf. State v. Smith,* 400 A.2d 749, 755 (Me.1979). Viewing all the evidence in the light most favorable to the State, the jury could not have found this essential element because the State presented no evidence to show that Currier could have developed a belief that the diamonds found on his person at the time of his arrest were stolen.[4] Because the State failed to prove an essential element of the crime of theft by receiving, his conviction for that offense must be vacated. *See*

---

**2.** Under the Fourth Amendment, there is no difference between the intrusion associated with an immediate, on the spot search of the vehicle and impoundment followed by a search pursuant to a valid warrant once the requisite probable cause is made out. *See United States v. Ross,* 456 U.S. at 807–08, n. 9, 102 S.Ct. at 2163–64, n. 9.

**3.** Of course, additional information obtained from the informant enhanced the probable cause supporting the warrant, but this information should not be considered in the determination of whether the search and seizure of the car was valid because Currier experienced significant intrusions upon his Fourth Amendment rights before Chase obtained that corroborative information.

**4.** Currier did not testify at trial. The State presented no evidence concerning the identity of the person who allegedly stole the diamond nor any evidence concerning Currier's connection to such a person. Unlike *State v. Geisinger,* 479 A.2d 1315, 1316 (Me.1984) where evidence was presented that the defendant had sold a stolen item for less value than its worth, there was no evidence in this case leading to a reasonable inference that Currier knew that the diamond in his possession was stolen.

*State v. Lunney,* 400 A.2d 759, 763–64 (Me.1979).

The entry is:

Judgment on Count I affirmed.

Judgment on Count II vacated. Remanded to Superior Court for entry of judgment of acquittal.

All concurring.