STATE OF MAINE                                SUPERIOR COURT
AROOSTOOK,ss                                  DOCKET NO. CR-14-515


STATE OF MAINE                    )
                                  )
                                  )
                                  )
vs.                               )          ORDER ON MOTION TO SUPPRESS
                                  )
                                  )
                                  )
DENNIS WINCHESTER                 )
                    Defendant     )

Pending before the court is the Defendant's Motion to Suppress. The Defendant contends

that his rights to due process have been violated by what he alleges to be the State's failure to

preserve exculpatory evidence. The court has conducted an evidentiary hearing in this matter and

has now had the opportunity to consider the evidence and the arguments of counsel. For the

reasons set forth herein, the court denies this motion.

In this case, Van Buren Police Chief Michael Bresett was investigating a theft of property

belonging to Nathan Marquis. In conjunction with the search of property apparently belonging

to Holly Anderson in Van Buren[1], the trooper seized a collection of tools. Mr. Marquis identified

the tools as his and thereafter, Chief Bresett returned them to him. The State has now charged the

Defendant with Theft (Class C); Violation of Condition of Release (Class E); Possession of a

Firearm by a Prohibited Person (Class C) and Receiving Stolen Property (ClassC).

The Defendant contends that his right to a fair trial comporting with due process

requirements has been compromised by virtue of the fact that law enforcement officers returned

the subject items to their purported owners rather than retaining them within their control. The

---

[1] It isn't clear to the court whether Ms Anderson is the owner of the property or whether she is a
tenant. It also is not clear if the Defendant has any ownership or other possessory interest in the

1

essence of the Defendant's argument is that the State's failure to preserve this evidence violated his right to due process.

In <u>California v Trombetta</u>, 467 U.S. 479, 488-89, the United States Supreme Court held that the question of whether a defendant has been denied his right to a fair trial as the result of the State's loss or destruction of evidence is not limited to whether the State has acted in bad faith or not. "Rather, ...the question of whether a defendant is required to prove that the State acted in bad faith is a function of the nature of the lost or destroyed evidence." The Court made it clear that prosecutors have a duty to preserve *material* evidence and for evidence to be regarded as *material*, that evidence must possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Further, the Court stated that, in the absence of demonstrated bad faith, the prosecutors failure to preserve only *potentially useful* evidence is not a denial of due process.

Our Law Court has addressed this issue in <u>State v. Cote</u>, 2015 ME 78, ¶ 15, 118 A.3d 805, 810 when it wrote,

> [ to] determine whether the State's failure to preserve evidence violated a defendant's right to a fair trial, the trial court is required to conduct a bifurcated analysis. First, the court must determine whether the evidence possessed an exculpatory value that was apparent before the evidence was destroyed. If so, then the defendant must show only that the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. If, however, the exculpatory value of the evidence was not apparent at the time of its loss or disappearance, the defendant cannot establish a constitutional deprivation without proof that the State also acted in bad faith in failing to preserve the evidence.

In this case, the Defendant has failed to demonstrate that the evidence claimed to be "lost or destroyed" possessed any exculpatory value that was apparent at the time of its "loss." Further,

2

the Defendant has failed to demonstrate any bad faith of the part of the law enforcement officers involved in handling that evidence.

Moreover, irrespective of the questions of whether the evidence possessed "exculpatory value" and whether the prosecution acted in "bad faith", the Defendant faces a more basic problem. Before the court can turn its attention to whether evidence was "exculpatory" or whether there has been "bad faith", the Defendant must get over a threshold requirement that in deed, the subject evidence has been "lost or destroyed." All that the Defendant has demonstrated is that law enforcement officers returned property to its purported owner. The Defendant has not demonstrated that the evidence will not be available for his trial. The court is aware of no prohibition for law enforcement officers to return property to owners pending trial. If the State can produce the evidence at trial, by definition it is not "lost or destroyed." In State v. Smith, 400 A.2d 749, 757, the Law Court stated that the State had no obligation to provide for inspection of objects outside of its possession, custody or control. Once such objects were returned to their owner, those objects were as accessible to the Defendant as they were to the State. Should it occur that the owner has not retained custody of the object pending trial or has otherwise failed to produce it at trial, then it may well be the State that is prejudiced by its actions rather than the Defendant.

The Defendant raises a second challenge to the State's introduction of the canoe belonging to Joseph Paradis as evidence relating to the charge of Receiving Stolen Property as set forth in Count 5 of the indictment. That challenge centers around the execution of search warrants upon the Anderson property on November 9, 2014 and November 11, 2014. It is clear that the search warrant that law enforcement obtained did not identify a canoe as the object of their search. However, it has long been the law of this State and the nation that "objects in plain

3

view, sighted inadvertently after a lawful intrusion into activities or areas as to which there is a reasonable expectation of privacy will be admissible. State v. Cloutier, 544 A.2d 1277, 1280 (citing Coolidge v. New Hampshire, 403 U.S. 443).

Chief Bresett and other law enforcement officers went upon the premises pursuant to two warrants, neither of which has been challenged. They also went upon the property with the express consent of Ms. Anderson. During one of the visits to the property Chief Bresett observed several green canoes. He did not seize them. In December, Chief Bresett received a call from Mr. Paradis complaining that he had reason to believe that the Defendant had stolen his canoe. He gave the officer the registration numbers of the canoe. Chief Bresett recalled seeing canoes at the Anderson property and sent Officer Marquis back to the premises. Officer Marquis obtained the consent of Ms. Anderson to go upon the property to look at the canoes.[2] He readily saw that one of them bore evidence of a registration number that the State had assigned to Mr. Paradis.[3] He seized the canoe. This court concludes that Chief Bresett was lawfully on the premises and that the seizure was authorized by the "plain view doctrine."

The entry shall be: The Defendant's Motion to Suppress is denied.

October 27, 2016

E. Allen Hunter
Active Retired Justice of the Superior Court

---

[2] Ms. Anderson agreed that she gave consent for the officers to go upon her property and take the canoe to the police station so that the purported owner could identify it, however she maintains that she gave her consent only after Officer Marquis told her that he would summons her for being in possession of stolen property if she did not consent. The Defendant has presented no additional developed argument on this particular point aside from an assertion that the law enforcement officers circumvented constitutional principles. Accordingly, the court does not discuss this issue further.

[3] Although the actual registration numbers had been removed, impressions of those numbers clearly remained and Chief Bresett was able to read them.